## DUNCAN v. THOMPSON, TRUSTEE.

No. 78.   Argued December 16, 1941.—Decided January 12, 1942.

*Mr. Harry G. Waltner, Jr.*, with whom *Mr. John Moberly* was on the brief, for petitioner.

1

*Mr. John H. Flanigan,* with whom *Messrs. Thos. J. Cole* and *Allen McReynolds* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

April 10, 1936, petitioner Duncan, while performing duties as respondent's employee, fell from a locomotive and was injured. Since at the time he was working for a "common carrier by railroad" and in interstate commerce, the right to recover damages is governed by the

Federal Employers' Liability Act. 35 Stat. 65. Sixteen months later, August 13, 1937, Duncan was still suffering from his injuries, his wife was in the hospital, and he needed money. On that day, upon Duncan's signing an instrument presented to him by the company's claim agent, he was paid $600 "for living and other expenses pending further developments as to the extent and effect of said injuries and negotiations for settlement of [his] claim." The instrument also stated that:

"In consideration of said payment of $600.00, I agree with said Trustee that I will endeavor, in good faith, to adjust and settle any claim I may have for my injuries without resorting to litigation, but I agree that if my claim is not so adjusted, and I elect to bring suit, I will first return the said sum of $600.00 to said Trustee and said return shall be a prerequisite to the filing and maintenance of any such suit."

About eight months later, April 4, 1938, negotiations for settlement not having been successful, Duncan, without returning the $600, sued the respondent in a Missouri state court, charging that his injuries resulted from the negligence of the respondent's servants or agents. Among other pleadings, the respondent filed a plea in abatement alleging that "this suit and action have been begun and commenced by plaintiff without the pre-requisite return to defendant trustee of said sum of $600, . . . and this action is pre-mature and should be dismissed by the Court." Duncan replied that the agreement, so far as it purported to create a condition precedent to bringing suit, was void under § 5 of the Federal Employers' Liability Act, 35 Stat. 65, 66, which in part provides:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void . . ."

4

The trial judge held the agreement did not bar Duncan's suit, but submitted the issues of negligence to the jury with instructions that if their verdict should be for him the railroad would be entitled to a credit of $600 and interest. The verdict was for Duncan and, after appropriate subtraction for the prior payment to him, judgment for $5,000 was entered in his favor. The Springfield Court of Appeals reversed, holding that the invalidating effect of § 5 does not extend to contracts made after an employee is injured, 146 S. W. 2d 112, and the Missouri Supreme Court declined to review its action.

In *Philadelphia, B. & W. R. Co.* v. *Schubert,* 224 U. S. 603, 611, this Court referred to § 5 as follows:

"The evident purpose of Congress was to enlarge the scope of the section and to make it more comprehensive by a generic, rather than a specific, description. It thus brings within its purview 'any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act.' It includes every variety of agreement or arrangement of this nature . . ."

While this interpretation is broad enough to bring within § 5 contracts made after as well as before the injury, the agreement at issue in the *Schubert* case was made prior to the injury, and the actual decision therefore does not control agreements which, like that now before us, are made after the injury has occurred. Moreover, several state courts have expressed the view that contracts made after the injury has occurred are not invalidated by § 5. See, *e. g., Ballenger* v. *Southern Ry. Co.,* 106 S. C. 200, 203, 90 S. E. 1019; *Patton* v. *Atchison, T. & S. F. Ry. Co.,* 59 Okla. 155, 156, 158 P. 576; *Lindsay* v. *Acme Cement Plaster Co.,* 220 Mich. 367, 377, 190 N. W. 275; *Carlson* v. *Northern Pacific Ry. Co.,* 82 Mont. 559, 568, 268 P. 549.

Because of this divergence of judicial opinion as to the interpretation of § 5, and because the scope of § 5 is of fundamental importance in the administration of the Federal Employers' Liability Act, we granted certiorari.

Section 3 of the first Federal Employers' Liability Act,[1] passed by Congress in 1906, provided that "no contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employee. . . ." The court below, taking the position that the word "contract" as used in § 3 referred only to contracts entered into before the injury occurred, concluded that § 5 of the present act is no broader in this respect, but merely includes contracts, rules, regulations, or devices in effect before the injury. In our opinion, the difference in the language of the two sections and the legislative history of the later one cannot be reconciled with this conclusion.

It is clear from the Congressional committee hearings and reports on the Federal Employers' Liability Act now in force, not only that close study was made of the entire 1906 Act and in particular of § 3, but also that considerable attention was given to state employers' liability acts and experience under them. Section 3 was incorporated verbatim in one of the two bills introduced in the Senate, but it was the bill containing the broader language of the present § 5 that survived consideration. See Hearings on S. 3080, February 20, 1908, p. 3, and compare Senate Report No. 460, 60th Cong., 1st Sess., p. 4. Without more, the change from "contract" to "any contract, rule,

---

[1] 34 Stat. 232. This act was declared unconstitutional in the *Employers' Liability Cases*, 207 U. S. 463.

6

regulation, or device whatsoever" would seem to be an enlargement ample to include agreements made after the event of injury.

But there is more. Under the state acts there had been widespread attempts by employers to contract themselves out of the liabilities the acts were intended to impose. State legislatures had responded to this practice by adopting provisions which proscribed employer-employee agreements intended to deprive employees of the statutory benefits. These provisions varied in scope and language. Some declared agreements attempting to exempt employers from liability void only when they were part of contracts of employment. One state, although not limiting the statutory invalidation to contracts of employment, specifically restricted it to agreements "entered into prior to the injury." Other states, presumably after experience had shown that narrower limitations were inadequate to stamp out ingenious evasions of the statutory responsibilities, adopted measures invalidating agreements of any type, regardless of when made, which attempted to exempt employers from liability. House Report No. 1386, 60th Cong., 1st Sess., pp. 30–75.

The report of the House Judiciary Committee on the second Federal Employers' Liability Act set out all of the state statutes then in effect. Because the various state measures directed against contractual arrangements intended to exempt employers from liability were thus laid before Congress, the rejection of the restrictive language of § 3 of the old act indicates a deliberate abandonment of the limitations of that section. And the adoption of § 5 of the present act, without adding any of the other limitations which some of the state statutes had embodied, argues persuasively that Congress wanted § 5 to have the full effect that its comprehensive phraseology implies.

Concluding that the phrase "any contract, rule, regulation, or device whatsoever" as used in § 5 comprehends the instrument signed by Duncan long after he had been injured, we turn to the remaining question: whether "the purpose or intent" of the instrument was to enable the respondent "to exempt itself from any liability created by [the] Act." The instrument prepared by the respondent for Duncan's signature purported to create a condition precedent to his bringing suit, the refunding of $600. By its terms, unless this condition were satisfied—and in view of Duncan's straitened circumstances the probability of satisfaction would seem negligible—Duncan's only means of enforcing such liabilities as should have beem assumed by the respondent would be taken from him. Hence, the agreement, if valid, would effectively exempt the respondent from liability under the act, no matter what the merits of Duncan's claim.

The respondent contends, however, that § 5 does not invalidate compromises of disputed claims, and that the agreement here is in the nature of a conditional compromise. We need not here determine what limitations, if any, § 5 places upon the validity of agreements not to sue if made in consideration of a bona fide compromise and settlement of claims arising under the act, because the very language of the agreement indicates it is not a compromise and settlement. While the agreement does contemplate the possibility of future settlement, it expressly stated that the $600 was advanced "for living and other expenses pending further developments as to the extent and effect of . . . injuries and negotiations for settlement of [the] claim." And the claim agent of the respondent testified that the agreement was in a form regularly used by the respondent when its employees "had a long disability period like he [Duncan] had had . . . to tide

them over until they had their recovery before we negotiate final settlement." We are unpersuaded, therefore, by any argument which depends upon treating the agreement signed by Duncan as a compromise.

The judgment of the Springfield Court of Appeals is

*Reversed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.