**Adrian GUERRERO, Appellant,**

v.

**AMERICAN–HAWAIIAN STEAMSHIP COMPANY, Appellee.**

**No. 14364.**

United States Court of Appeals
Ninth Circuit.

April 15, 1955.

Rehearing Denied June 15, 1955.

———◆———

David A. Fall, San Pedro, Cal., for appellant.

Lasher B. Gallagher, San Francisco, Cal., Robert Sikes, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

STEPHENS, Circuit Judge.

Adrian Guerrero was injured on a ship while serving as a seaman employed by American-Hawaiian Steamship Company. He brought suit in the United States District Court under § 33 of the Merchant Seamen's Act of June 5, 1920, amending § 20 of the Seamen's Act of March 4, 1915,[1] for compensatory damages against his employer. The defendant answered by admitting the employment and an injury, but denied the extent of the injury and denied that it was the cause of the injury. Defendant alleged affirmatively that plaintiff caused his own injury and that he had executed a valid and final general release to it.

The case was heard and submitted to the jury and after due consideration it reported that an agreement could not be reached; whereupon the court dismissed the jury. Thereafter the judge requested counsel to file briefs upon the question of validity of the written release which had been alleged by defendant, and which had been introduced into evidence in the course of the trial. Accordingly, briefs were filed and at a subsequent session of the court, without a jury, the judge strongly intimated, in fact decided, that he had determined that the release was valid and suggested that defendant file a motion for a summary judgment. On the following date to which the court had continued the case for setting, the motion for a summary judgment was made by defendant. After a colloquy between the court and plaintiff's counsel in which the latter argued that only a jury could decide the facts, the court granted defendant's motion and ordered judgment for defendant, and judgment was entered.

That judgment is before us on plaintiff's appeal.

Appellant claims that there are questions of material fact in the case which he has a right to have resolved by a jury and appellee counters with its claim that the written release is in standard form, that the evidence presented to the discharged jury showed conclusively that appellant thoroughly understood the terms of the release and signed and accepted payment in accordance with it under legal and other advice and there was no "over-reaching".

No one disputes the premise that seamen are under the protection of the courts, that courts will scrutinize releases when they are questioned, and that the burden is on the employer to show the validity of the release. No one here disputes the right of the seaman to a jury trial of the issues he raises so long as there are unresolved issues between the parties. Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239.

The main question on appeal is: Did the trial judge, in the circumstances obtaining here, have the power to decide that there were no unresolved genuine issues in the case?

The Federal Rules of Civil Procedure, by Rule 56, Title 28 U.S.C.A., provide for the disposing of causes by summary judgment. A summary judgment may be loosely defined as a judgment decreed by the court in a case pending before it when as a matter of law the proceedings show that there is no issue between the parties.

Appellee-defendant's notice of motion and the motion for a summary judgment refer exclusively to the validity of the release. The motion sets out, without affi-

---

1. See the Jones Act, 41 Stat. at Large 988, 1007; Title 46 U.S.C.A. § 688.

Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, § 33, 41 Stat. 1007.

davit, and without recital of the record and without inclusion of the evidence given before the jury which failed to reach a verdict, that:

"The evidence given at the trial shows without dispute that: [Then follows nine numbered statements which counsel has deduced from the evidence as established facts]."

The motion ends with the following paragraph:

"Conclusion

"In view of the above uncontroverted facts given in sworn testimony at the trial or set out in exhibits introduced into evidence, there can be no question but that the release is valid as a matter of law; that there is no question of fact to go to the jury; and that defendant, American-Hawaiian Steamship Company, a corporation, should have a summary judgment in its favor."

The record shows that the Notice and the motion for summary judgment (in one document) was filed February 23, 1954, and that on the same day "Proposed Findings of Fact and Conclusions of Law", and a "Proposed Judgment", each conforming to the motion for summary judgment, were filed. And the record further shows that "Findings of Fact and Conclusions of Law" were "Lodged March 19, 1954" and "Filed March 26, 1954".

Rule 56(c) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., provides in part:

"* * * The [summary] judgment sought shall be rendered forthwith if the *pleadings, depositions,* and *admissions* on file, together with the *affidavits,* if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.*" [Emphasis added.]

It is not contended that the "pleadings" in the case show that there are no "genuine issues". There are no "depositions" or "affidavits" filed with the motion; and there are no "admissions" set up in the motion.

In awarding judgment for defendant-appellee at the summary hearing, the trial judge assumed that the evidence in the abortive trial was *live* for his consideration and that he was authorized to consider plaintiff-appellant's testimony and rule that there were "no genuine issues" existing between the parties and that therefore he had the power and the duty to cause a judgment to be entered in favor of the defendant-appellee. Plaintiff-appellant denied that the court had such power and protested that the court was usurping the power given the jury by the Seventh Amendment to the United States Constitution. We adopt as a part of this opinion the essential parts of the colloquy had between court and counsel upon consideration of the motion for summary judgment,[2] but in

2. "The Court: I have gone over all your authorities relative to the question of the release. I have come to the conclusion that if this release is not good, no release is good. I think the release is an absolute defense.

"However, I can't rule upon the matter this morning, but if you will file a motion for summary judgment, I will rule on it. I don't think there is any necessity for setting the matter for trial. * * * If the release isn't good, no release is good.

"Mr. Fall [attorney for plaintiff]: I see what you mean. I think under the circumstances the release was not good, but I don't know whether it is a mat-

ter of summary judgment to be disposed of in that way.

"The Court: Well, make a motion based on the files and records of the case. We have a transcript of the evidence.

*       *       *       *       *

"The Court: I think he did [have a lawyer]. Not only that, Mr. Fall, if the settlement had been so small that it would seem to me to be clear out of question, it would be a different story, but I think he got a pretty good settlement * * *. I won't set the matter down for trial. I will dispose of this on a motion.

the interest of space we quote it in footnote 2.

There are a number of fatal frailties to the procedure used to arrive at the Findings of Fact and Conclusions of Law, and a judgment. First, we venture to say that the evidence given to the discharged jury is no longer *alive* as evidence in the case. It is not evidence in the breast of the trial judge for application to any trial of the case, either to another jury or to the judge in summary or in regular trial. Possibly, it could have been set up in an affidavit as evidence amounting to an admission in aid of the summary trial, or have been used

"Mr. Sikes [attorney for defendant]: I have a motion, your Honor.

"The Court: If this release isn't good, then no release is.

"Mr. Fall: Is your Honor going to deprive the jury of deciding the question of fact?

"The Court: There is no question of fact here. The release is a written release. We have all the evidence before us. I can pass upon that. I think I would be justified in directing a verdict on the ground the release is a complete bar." [Supp. Record on Appeal pp. 2, 3]

On March 1, 1954, the matter was continued to March 8, 1954.

On March 8, 1954, the record indicates the following:

"The Court: Haven't I indicated already to counsel what I was going to do in this case?

"Mr. Sikes: I have received an intimation, I would judge, from your words, your Honor.

"Mr. Fall: I would like to be heard briefly on two cases for the record. I am satisfied your Honor is going to grant the motion, but I would like to call your Honor's attention to certain things.

\*　\*　\*　\*　\*

"The Court: I congratulate you. Mr. Fall, I have indicated in this case I was going to hold the release is good and valid. If it isn't good, no release is good.

"Mr. Fall: I want to cite a few cases showing such would be error. Garrett v. Moore-McCormack Co., 317 U.S. [239, 63 S.Ct. 246, 87 L.Ed. 239].

\*　\*　\*　\*　\*

"The Court: I say I have read that case.

"Mr. Fall: I know your Honor has read it, but in that case the court held there was a question of fact whether or not the seaman had the medical and legal advice available and—

"The Court: Mr. Fall, I don't want to re-argue the case. This case was tried before a jury. The court is familiar with all the facts. The jury couldn't agree. I have decided from all the facts presented to the jury that this release is valid and good.

"Mr. Fall: The court is not entitled to do that. That is a question of fact for the jury. A jury trial was demanded and under Chamberlain [Camerlin] v. New York Central Railroad [1 Cir.], 199 F.2d 698, 703, the court said, "If there are any genuine issues of fact relevant to the validity of a purported release, such issues are to be determined by the jury, and not the trial judge."

"The Court: I have given the libelant every advantage. I have considered his testimony. I have taken his word for it. I am not deciding this upon the testimony of the respondent. I am deciding it upon the testimony of the libelant himself.

"Mr. Fall: You are going into a question of fact which is a fact that the jury must determine. This court does not have the power to determine a question of fact. That is for the jury, and because there was a hung jury, it means—

"The Court: If I were resolving the facts, if I were to disbelieve the libelant's testimony, then I would send it back to the jury. But I am taking the libelant's testimony at face value. I am taking his story as he told it, and as he told it I don't think he can avoid the release.

"Mr. Fall: This court can't determine that. That is a question of fact for the jury.

"The Court: This court can. The Circuit may reverse, but this court is determining the fact.

"Mr. Fall: Under the heavy weight of authorities, and there are no cases to the contrary, following that case right on down through Duncan v. Thompson, 315 U.S. [1, 62 S.Ct. 422, 86 L.Ed. 575].

"The Court: Well, the motion for summary judgment is granted. You have got a very simple record to appeal to the Circuit with.

"Mr. Fall: Yes, I know, but the cases—

"The Court: If the Circuit says I am wrong in granting the motion, then I will let the jury decide the question of damages. That's all there is to it.

"Will you prepare the order?

"Mr. Sikes: Yes, sir. I have already submitted proposed findings.

on cross-examination, or it could have been admitted by stipulation, but not merely because the court heard the testimony given at another trial in which the same judge presided can it be brought in as evidence in aid of the new pleading at a different trial.

The fact that the case is essentially a jury case must be kept foremost in mind. Even where a verdict has been reached and a judgment entered in accordance with it, but the judgment has been reversed on appeal, the new trial is not a revaluation of the evidence introduced in the old trial. Blackstone, at p. 391 of Volume 3 of his *Commentaries*, said:

> "A new trial is a rehearing of the cause before another jury * * * The parties come better informed, the counsel better prepared, the law is more fully understood, the judge is more master of the subject; and nothing is now tried but the real merits of the case."

The new trial starts "at scratch" upon the pleadings, and there is no evidence yet in the case. The seaman may testify differently or correct the testimony given by him at the first trial, when questioned about it. The jury may listen to the testimony given in the trial before it and any new version may, of course, be attacked by asking the seaman to explain his former statements, but after all is said and done, the jury decides upon its estimate of the whole evidence adduced to it in the new trial as it values it in the attendant circumstances including the credence it accords the witness.

But even if we are entirely wrong in what we have said and we intimate no doubt upon it, and the court was right in applying his memory of evidence in the abortive trial, to the new trial, the judgment must nevertheless be reversed.

As we have just said, the testimony may be enough different to shift a correct decision, but this is not all.

Neither the motion for a summary judgment, nor anything the court said, remotely indicate that the seaman ever *admitted* in his testimony that the release was valid. Appellee, it is clear, was under the impression that every essential to the validity of the release was proved and this was the court's view. But there is no contention that appellant seaman admitted that the evidence established such alleged fact. Here, unquestionably, was a question of fact which, under the Seventh Amendment, could be resolved only by a jury from the evidence in the case.

As was said in Slocum v. New York Life Ins. Co., 1913, 228 U.S. 364, 386–387, 33 S.Ct. 523, 532, 57 L.Ed. 879:

> "But, without a waiver of the right of trial by jury, by consent of parties, the court errs if it substitutes itself for the jury, and, passing upon the *effect of the evidence,* finds the facts involved in the issue and renders judgment thereon." [Emphasis added.]

The situation just alluded to by the Slocum case was where a verdict had been reached but the judgment had been set aside. In referring to a demurrer to the evidence in the same case, the court said, 228 U.S. at pages 388–389, 33 S.Ct. at page 533:

> " * * * and the admission [of facts on demurrer] * * * must be of the facts, and not merely the evidence from which their existence is inferable."

So inclusive is the rule (that facts must be found by a verdict of the jury) that even in cases tried to a jury and verdict rendered, the right of the court to order a judgment upon the ground that the plaintiff has made no case, is extremely limited. This practice has been set out in Rule 50 of the Federal Rules of Civil Procedure, Title 28 U.S. C.A., which provides,[3] in accord with the

"The Court: Now you can prepare the findings and judgment.

"Mr. Sikes: Thank you, your Honor."

(Supp. Record on Appeal, pp. 6 to 11 inclusive)

3. When the plaintiff rests his case the de-

common law practice, that at the close of the plaintiff's case or after all of the evidence is in, the defendant may make a motion for a directed verdict. The court may rule at the time, but he may delay ruling for a fixed period (10 days) and go on with the case to a verdict. Thereafter, in cases where the verdict was in favor of the plaintiff, if, in the court's judgment, no case had been made by the plaintiff, the court may set the judgment aside and order judgment in favor of the defendant. But the court has no such right when the motion for a directed verdict has not been made. This practice was permitted at common law in this country and in England at the time our courts were established, and the practice as set out in Rule 50, supra, extended to apply to cases where no verdict was found, is therefore not in derogation of the jury verdict requirement but is in conformity therewith upon the theory that the case was in progress, and the court's action relates back to the close of the plaintiff's case.

In our case, no such motion was made. See Baltimore & Carolina Line, Inc. v. Redman, 1935, 295 U.S. 654, 658–660, 55 S.Ct. 890, 79 L.Ed. 1636.

In our case, no decision on the facts had ever been submitted to a jury when the court took the case to himself and found facts from evidence which had been presented in a former proceeding in a differently constituted court. We know of no sanction for such action. As was said in the Slocum case, 228 U.S. at page 392, 33 S.Ct. at page 534:

"So, in the present case, when the verdict was set aside, there remained no ascertained facts on which a judgment might be rested, and that made a new trial necessary."

But the case, appellant claims, requires consideration of another important feature. The Federal Rules of Civil Procedure, by Rule 83, provide that each district court may " * * * from time to time make and amend rules governing its practice not inconsistent with these rules * * *." The judges of the district court here concerned have acted, assumedly under such power, by adopting Rule 3(d) (2) (of Rules of the United States District Court for the Southern District of California) as to summary judgments, which reads (in part):

"In determining any motion for summary judgment, the court *may* assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion." [Emphasis added.]

We take it from the transcript that the "*Proposed* Findings of Fact and Conclusions of Law," which were filed on the same day that the motion for a summary judgment was filed, were meant to be in conformity with the above rule.

No response was made in writing to the motion including the findings of fact and conclusions of law. But the moving papers in the summary proceedings show there were questions of fact at issue. See Griffith v. Wm. Penn Broadcasting Co., 1945, 4 F.R.D. 475; Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305, 307; Hoffman v. Babbitt Bros. Trading Co., 9 Cir., 1953, 203 F.2d 636, 637. As was said in United States v. Silliman, D.C., 1946, 65 F.Supp. 665, 670, reversed on other grounds, 3 Cir., 1948, 167 F.2d 607:

fendant may, should he desire, move for a directed verdict under Rule 50:
"(a) * * * A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor.
"(b) Whenever a motion for a directed verdict made at the close of all the evi-

dence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. * * * or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict * * *."

"The moving papers and affidavits filed herein indicate a substantial dispute of material fact. Such circumstance forecloses a summary judgment since all doubts as to the existence of a genuine issue as to material fact must be resolved against the party moving for a summary judgment. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016."

 But the rule [3a] does not require the court to act under its provisions at all, as the rule reads:

" * * * the court *may* assume" [emphasis added] the facts, except etc. In our case, the transcript of the proceedings had *after* the discharge of the jury only is furnished us. It shows that the trial judge was strongly convinced, *from the evidence introduced* in the abortive trial, that the written release was valid in all respects. He took the evidence he had heard while it was being given to the court and jury and which he had re-read and studied after the jury had been discharged and applied it to the issues of the instant case and entered his judgment thereon.[4] No mention was ever made by the judge or by either counsel to the district court rule, above referred to. The judge asked for and received briefs on the issue as though the transcript of the evidence adduced before the jury was before him for consideration and for decision.

Contrary to the principles above set out, the court weighed the evidence and decided that it, especially the testimony of the seaman, constituted an admission of all of the elements necessary to the validity of the release. The procedure was irregular and constituted clear error.

There is no merit at all to the contention that the seaman was under the necessity of tendering the benefits given him by his employers in order to maintain his action. The doctrine is good as to certain commercial transactions, but has no application to the instant case. Garrett v. Moore-McCormack Co., Inc., 1942, 317 U.S. 239, 246, 63 S.Ct. 246, 87 L.Ed. 239; Harden v. Gordon, Fed. Cas.No.6,047.

The judgment is reversed and remanded for a new trial in accordance with this opinion.

Reversed and remanded.

---

**3a** "Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth." Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305, 307.

**4.** There is no transcript of the evidence before us except as to the proceedings had *after* the discharge of the jury, and appellant states in his brief that "No affidavits were filed by the defendant, nor was a transcript of the testimony at the time of trial prepared and filed with the court." (Appellant's Reply Brief, p. 3). We take it that a transcript of the evidence was furnished the court at a later date because the transcript of the summary proceedings shows the following statement by the judge:

" * * * We have a transcript of the evidence. I have gone over the evidence a second time * * *."