301 F.2d 458
 Aleen CHABOT, Plaintiff-Appellant,
v.
EMPIRE TRUST COMPANY, Defendant-Appellee, and National
Securities & Research Corporation, Defendant.
Seymour SCHWARTZ, Plaintiff-Appellant,
v.
NATIONAL SECURITIES & RESEARCH CORPORATION, Defendant, and
Empire Trust Company, Defendant-Appellee.
 Nos. 219, 220 Dockets 26844, 26845.
 United States Court of Appeals Second Circuit.
 Argued Feb. 13, 1962.
Decided March 28, 1962.
 
 William E. Haudek of Pomerantz, Levy & Haudek, New York City (Rosenfeld & Silverman, New York City, Albert Schlefer, Brooklyn, Rosenthal & Gurkin, New York City, on the brief), for plaintiff-appellant.
 Roy W. McDonald of Donovan, Leisure, Newton & Irvine, New York City (Robert V. Dunn, New York City, of counsel, on the brief), for defendants-appellees.
 Ellwood L. Englander, Sp. Counsel, Securities and Exchange Commission, Washington, D.C. (Peter A. Dammann, Gen. Counsel, Walter P. North, Asst. Gen. Counsel, Meyer Eisenberg, Washington, D.C., on the brief), for Securities and Exchange Commission, amicus curiae.
 Before CLARK, SMITH and HAYS, Circuit Judges.
 HAYS, Circuit Judge.
 
 
 1
 The issue which we are called upon to decide is whether a trustee of an investment trust registered under the Investment Company Act of 1940[1] can protect itself from liability to shareholders of the fund by including in the trust indenture a provision requiring shareholders to provide 'indemnity' for the costs and expenses of actions against the trustee. We hold that 17(h) of the Act prevents the trustee from requiring such indemnity.
 
 
 2
 The appellants are shareholders in the National Securities Series, a mutual investment fund organized as a common law trust and registered under the Investment Company Act of 1940. They brought the present actions against Empire Trust Company, as trustee, and National Securities and Research Corporation, as investment advisor, of the fund,[2] alleging, inter alia, that the fees annually collected by the defendants from the fund are 'grossly excessive and out of proportion to the value of the services rendered,' that these payments constitute willful conversion of the assets of the fund in violation of 37 of the Act, as well as a 'gross abuse of trust * * * (and) willful misfeasance' in violation of various provisions of the acts.[3] The complaints demand, in behalf of all shareholders, restoration to the fund of payments illegally made.
 
 
 3
 The court below, on motion of Empire, ordered that proceedings in the action be stayed until each of the plaintiffs delivers to Empire a bond in the amount of $35,000 to indemnify it for the costs and expenses of defending the action should the defendant prevail. The action against National was stayed until plaintiffs either post the required bonds or consent to a dismissal of the suit against Empire.[4] It is this order which is here on appeal.[5]
 
 
 4
 The clause of the trust agreement on which Empire relies to sustain the order of the lawer court provides:
 
 
 5
 '8.10. No shareholder and no legal representative of any deceased or incompetent shareholder shall have the right to take any action or proceeding for the partition or winding up of the trust. No such shareholder or representative shall have the right to an accounting, except upon furnishing indemnity satisfactory to the Trustee against the costs and expenses thereof, including counsel fees, such indemnity to be payable unless it shall be established that the Trustee has been guilty of fraud, or of misfeasance, or of gross negligence with respect to the performance of duties specifically imposed upon it hereunder, substantially prejudicial to shareholders.'
 
 
 6
 We hold that the clause must fail of its intended purpose because it is violative of 17(h) of the Investment Company Act of 1940 which provides:
 
 
 7
 'After one year from the effective date of this title, neither the charter, certificate of incorporation, articles of association, indenture of trust, nor the by-laws of any registered investment company, not any other instrument pursuant to which such a company is organized or administered, shall contain any provision which protects or purports to protect any director or officer of such company against any liability to the company or to its security holders to which he would otherwise be subject by reason of willful misfeasance, bad faity, gross negligence or reckless disregard of the duties involved in the conduct of his office.'[6]
 
 
 8
 Empire contends that 17(h) does not invalidate the indemnity provision of its 'indenture of trust,' because Empire is not a 'director.' Section 2 of the Act defines a director as 'any director of a corporation or any person performing similar functions with respect to any organization, whether incorporated or unincorporated, including any natural person who is a member of a board of trustees of a management company created as a common-law trust.' And a 'person' is defined as 'a natural person or a company.'
 
 
 9
 Empire's powers under the Trust Agreement bring it within this definition. Empire is responsible for the entire management of the fund, except the purchase and sale of the portfolio securities. Empire is empowered 'to do all acts, take all proceedings and exercise all such rights and privileges relating to any property at any time held by it as Trustes as could be done, taken or exercised by the absolute owner thereof, except as expressly restricted herein.' (Trust Agreement 8.5.) 'At any time the Trustee may take such action as it in good faity may believe to be required for the benefit of the trust property.' (8.8) Empire is charged with responsibility for selecting a successor investment advisor (10.2) and must consent to the creation of any new series of shares (11.1). It is unnecessary to describe in detail all of the many aspects of authority granted to Empire by the instrument. It is clear that the functions exercised by it as trustee are 'similar' to those exercised by a director; indeed they are identical in many respects.
 
 
 10
 That the investment advisor controls the purchase and sale of securities does not tend to establish that Empire is not a 'director' within the meaning of 17(h). Section 15(a) contemplates that an investment company may have both an investment advisor and a board of directors, and under 2(a)(19) an investment advisor may be 'impowered to determine what securities or other property shall be puchased or sold by such company.'
 
 
 11
 The purpose of 17(h) is to ensure that liability for violation of the duties and standards provided by the Act will not be defeated by the inclusion of protective contractual clauses. It seems clear that Congress did not intend to prevent certain of the persons who are subject to liability for violation of the Act from protecting themselves in this manner, while permitting others to do so. Insofar as it is in accord with the language of the section, 17(h) must be construed as coextensive with the substantive provisions of the Act. Under such a construction Empire is a 'director' within the meaning of 17(h).
 
 
 12
 Empire also urges that the indemnity clause of the trust agreement does not fall within the prohibition of 17(h) because the clause does not purport to exonerate Empire from the consequences of a violation of the statute. This argument flies in the face of the statutory language which speaks of protection rather than exculpation, but even if we were to accept appellee's position we would, of course, insist on examining substance rather than form in determining whether such a contractual clause had the effect of exculpation.
 
 
 13
 It is a well known fact that investors in mutual funds are primarily small shareholders.[7] Very few of them have a sufficiently large financial interest in the management of the fund to risk any considerable sum on the outcome of litigation. A clause that requires an initial stake of $35,000[8] as a condition of the protection of an investment of a fraction of that amount is, in practical operation, designed to provide complete exoneration. See Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1941). In the Duncan case petitioner was injured while employed within the coverage of the Federal Employer's Liability Act. While incapacitated and in need of funds, petitioner accepted $600 from his employer in consideration for which he agreed, in writing, to attempt to settle his claim without resort to litigation, and that, in the event he did choose to sue, the repayment of the $600 would be a prerequisite to bringing action. The Supreme Court unanimously held the agreement to repay void under 5 of the Act, 45 U.S.C.A. 55, which provides:
 
 
 14
 'Any contract, rule, regulation, or devide whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void * * *'
 
 The Court stated:
 
 15
 'By its terms, unless this condition were satisfied-- and in view of Duncan's straitened circumstances the probability of satisfaction would seem negligible-- Duncan's only means of enforcing such liabilities as should have been assumed by the respondent would be taken from him. Hence, the agreement, if valid, would effectively exempt the respondent from liability under the act, no matter what the merits of Duncan's claim.' 315 U.S. at 7, 62 S.Ct. at 424.
 
 
 16
 But 17(h) of the Investment Company Act does not prohibit only exculpatory clauses. It prohibits any clause which 'protects or purports to protect' against liability.[9] It is our view that any provision that renders litigation substantially less likely 'protects or purports to protect' directors and officers from liability under the Act.
 
 
 17
 Our conclusion applies to the case before us the declared policy of Congress. Section 1 of the Investment Company Act of 1940 states, as a 'declaration of policy,' that 'the national public interest and the interest of investors are adversely affected * * * when investment companies are organized, operated, (or) managed * * * in the interest of directors, officers, (or) investment advisors, * * * rather than in the interest of * * * security holders * * * (and) when investment companies * * * are not subjected to adequate independent scrutiny.' The same section instructs the courts to interpret the provisions of the act in a manner that will 'mitigate, and, so far as is feasible, * * * eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors.' The Act was designed to 'provide safeguards without undue restriction, so that those who desire to put their savings to work in this manner may do so with greater confidence.'[10]
 
 
 18
 Empire contends that the indemnity clause serves a legitimate function in protecting the fund, and ultimately its shareholders, from the expense of defending frivolous actions and that invalidation of the clause subverts that end. The requirement of security unquestionably discourages stockholder actions.[11] On the other hand stockholder actions provide that 'adequate independent scrutiny' of investment companies to which the Act refers, and thereby tend to deter violations of the Act and of the common law duties of such companies.[12] By the enactment of 17(h) Congress has expressed its judgment that the latter is the weightier concern-- that unscrupulous management presents a greater danger to the financial interests of the shareholders than do unfounded shareholder actions. It is not for this court to reweigh that judgment.
 
 
 19
 Reversed.
 
 
 
 [1]
 54 Stat. 789-847 (1940); 15 U.S.C.A. 80a-1 to 80a-52
 
 
 [2]
 The action was dismissed as to the fund itself on the ground that it is not an entity capable of being sued. Chabot v. Empire Trust Company, 189 F.Supp. 666, 667 (S.D.N.Y.1960)
 
 
 [3]
 In addition to 37, plaintiffs rely on 1(b)(2), 10, 15, 17(h), (i), and 36
 In Chabot v. National Securities and Research Corporation, 290 F.2d 657 (2d Cir. 1961), this court, in denying a motion by appellee to dismiss this appeal for want of appellate jurisdiction, questioned, ex mero motu, whether the action itself was within the jurisdiction of the federal courts. 290 F.2d at 659-660. The decision in Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961) has answered that question in favor of federal jurisdiction.
 
 
 [4]
 Chabot v. Empire Trust Company, 189 F.Supp. 666 (S.D.N.Y.1960). At the time of the order staying the actions, the defendants had not filed answers
 
 
 [5]
 In Chabot v. National Securities and Research Corporation, 290 F.2d 657 (2d Cir. 1961), this court sustained the right of appellants to take an interlocutory appeal from the order of the trial court
 
 
 [6]
 Our conclusion makes it unnecessary for us to consider the other contentions of appellant, including the contention that the clause also violates Section 47(a) of the same Act
 
 
 [7]
 See Comment, 71 Yale L.J. 137, 139 n. 11 (1961)
 
 
 [8]
 The proceedings below left open the posibility that further security demands may be made as the litigation proceeds. Thus plaintiffs have no assurance that the original $35,000 bonds are the limit of their required investment
 
 
 [9]
 It is significant that this provision as originally drafted forbade any contractual clause which 'relieves or purports to relieve' a director or officer from liability. Section 17(f), Draft Statute, reprinted in Hearings on S. 3850 Before a Subcommittee of the Senate Committee on Banking and Currency, 76th Cong., 3d Sess. (1940). The change evidence congressional intent to broaden the impact of the provision beyond that of exculpatory clauses
 
 
 [10]
 S.Rep. No. 1775, 76th Cong., 3d Sess. 6 (1940). See also id. at 6-7, H.R.Rep. No. 2639, 76th Cong., 3d Sess. 7-9 (1940). The increasing necessity of special legislation to protect shareholders of investment companies from unscrupulous management practices stemmed in part from the fact that publicity, heavily relied on to achieve the desired ends by the securities ligislation of 1933 and 1934, was inadequate in the context of the regulation of investment companies. S.Rep. No. 1775, supra, at 11-12; H.Rep. No. 2639, supra, at 10. Moreover many investment companies did not fall within the coverage of the earlier legislation. S.Rep. No. 1775, supra, at 12
 
 
 [11]
 See Hornstein, New Aspects of Stockholders' Derivative Suits, 47 Colum.L.Rev. 1, 3, 5 (1947) which discusses the inhibitory effect of the New York legislation requiring security bonds in certain derivative actions. The discussion is quoted in McClure v. Borne Chemical Co., 292 F.2d 824, 829 (3d Cir. 1961)
 
 
 [12]
 See McClure v. Borne Chemical Co., 292 F.2d 824, 827 (3d Cir. 1961)