John I. NEWTON, Plaintiff-Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, Defendant-Respondent.

No. 31860.

St. Louis Court of Appeals.

Missouri.

May 17, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied June 14, 1966.

Application to Transfer Denied Sept. 12, 1966.

George R. Gerhard, Theodore D. Ponfil, St. Louis, for plaintiff-appellant.

Ernest D. Grinnell, Jr., W. W. Dalton, Paul R. Moody, St. Louis, for defendant-respondent.

WOLFE, Presiding Judge.

This is an action brought under the Federal Employers' Liability Act for damages arising out of personal injuries. The injuries were alleged to have occurred during the course of plaintiff's employment as a locomotive fireman when he fell while descending some stairs from the cab of a diesel locomotive. There was a verdict and judgment for the plaintiff in the sum of $15,000. The defendant moved to set aside the verdict and judgment in accordance

with its motion for a directed verdict requested at the close of all of the evidence. The court sustained the motion and set aside the verdict and judgment and entered a judgment in favor of the defendant. The plaintiff duly perfected this appeal.

The plaintiff-appellant, who is forty-four years of age and had been employed by the defendant company for fifteen years and was still in their employ, worked as a member of the crew on diesel locomotives. On July 21, 1962, the crew of which the plaintiff was a member boarded a train in Oklahoma City to take it to Quanah, Texas. When the train arrived in Oklahoma City the crew that brought it in got off and the crew of which the plaintiff was a member took over.

The train consisted of sixty or seventy cars. It was powered by four diesel locomotive units. The leading locomotive was classified as an "A" unit and it was the control unit from which all four units were operated. The controls were in the cab in the front of the unit where the engineer, brakeman, and fireman sat. The diesel engine runs lengthwise of the remaining part of the locomotive with the walkway about twenty-four inches wide on either side of it. It is lower than the cab and the walkways are reached from the cab by two sets of stairs, one from the fireman's side and one from the engineer's side. Behind the lead locomotive were two "B" units. These have diesel motors running lengthwise of the cars with a walkway on either side but they have no cab or control section. The last unit of locomotion was another "A" unit attached backwards with the cab to the rear.

When the plaintiff boarded the train he checked the flagging equipment in the cab of the leading locomotive. After they had traveled about nine miles westwardly he left the cab to make his tour of inspection. This consisted of first going down to the engine part of the locomotive in which he was riding and checking various gauges on the engine. He then proceeded through the engine components of the other units making the same check. The engineer sat on the right side of the lead cab and the plaintiff and brakeman on the left. It was plaintiff's custom to go down the steps from the right side of the cab to start his inspection tour and to follow the walks through the various units on the right side until he had gone through the trailing "A" unit and then he would return by the fireman's side which was on the left side of the lead engine.

Following this procedure on July 21, 1962, he had gone one way through all of the four units. On his way back while descending the stairs from the cab of the trailing unit his foot slipped and he fell to a sitting position. He sat for a while and then continued on his inspection until he arrived back at the cab of the lead unit. He saw no oil upon the floor of the walks over which he had gone but when he got back to the cab he found oil on his shoes and some dirty oil on the back of his pants. He said upon cross examination that it was possible that his fall was caused by a mis-step. The plaintiff started experiencing pain from his waist downward to the end of his spine and when the train reached Quanah, Texas, he went to a doctor who hospitalized him. He was given medication for pain and X-rays were taken.

Testifying by deposition, the brakeman of the crew said that about four hours after the plaintiff fell and just before the train reached Quanah, Texas, he, the brakeman, took a camera which he had with him and went back to the trailing "A" unit. He there took a picture of some oil that he saw on one of the walkways of the trailing "A" unit and an oil smudge on one of the steps. He saw no footprints leading from the oil.

The plaintiff remained in the hospital in Quanah, Texas, for two days and was advised upon his departure to see a doctor at the Employees Hospital Association in Oklahoma City. He did this, as he was still bothered by his back. There he re-

ceived diathermy treatment and remained for thirty days at which time he was released to return to work. He was told that he had been suffering from bruises and pulled muscles. After his release from the hospital the plaintiff took two weeks vacation before returning to work.

The claim agent of the defendant told the plaintiff to come and see him when he felt like returning to work. Around the first of August he went to see the claim agent and they discussed the settlement of any claim the plaintiff might have against the defendant. Both the claim agent and the defendant were under the impression that the plaintiff had suffered nothing more than pulled back muscles. The claim agent made an offer of less than $500 and the plaintiff asked for $1,250. Over a period of a week or ten days they intermittently discussed the matter: the agent raised his offer to $800 and the plaintiff lowered his request to $1,000. They finally compromised on the sum of $900 for which sum the plaintiff fully released the defendant.

The plaintiff returned to work and experienced no difficulty with his back until the latter part of October when he started having pains that worked down from his back to his leg. By December the pains had become continuous. He was hospitalized on January 7, 1963, and after a myelogram taken on February 18 it was found that he had a ruptured intervertebral disc and an operation was performed on February 15. After he was released from the hospital he stayed home until May 27 when he returned to work as a fireman for the defendant. He has some limitation in movement but is able to perform the same work.

The plaintiff brought this suit on March 22, 1963, and the defendant set up as an affirmative defense the release signed by the plaintiff. The plaintiff in answer to the defense raised asserted that the release arose out of a mutual mistake of fact. Neither party knew of any injury to the intervertebral disc at the time the release was signed. It is conceded, however, that

at no time did the plaintiff tender or offer back to the defendant the $900 received at the time the release was signed.

The defendant's motion for judgment in accordance with his motion for a directed verdict set forth two basic grounds. One was that the evidence failed to present any facts or valid inferences from which the defendant could be found negligent. The other ground for the motion was that before the plaintiff could maintain an action to set aside the release which he had signed he was obliged to have tendered back the consideration he received for the release, and this he had not done. As stated, the trial court sustained the motion and entered judgment for the defendant. The plaintiff-appellant here contends that the evidence was sufficient to take the case to the jury. He also contends that no tender of the consideration for a release is necessary to set aside a release entered into by reason of a mutual mistake of fact.

Considering the matter of the release, it appears from the evidence that neither party knew, at the time that the release was signed, that the plaintiff had a ruptured intervertebral disc. Both the plaintiff and the defendant's claim agent had been informed by the examining doctors that the plaintiff's ailment was a pulled back muscle. This was sufficient evidence to warrant submitting the issue of mutual mistake to the jury (Goodman v. Missouri Pacific Railroad Company, Mo., 312 S.W.2d 42, l. c. 47) if plaintiff could submit the issue without a tender back of the consideration which he had received.

■ Plaintiff asserts that the release was in violation of the Federal Employers' Liability Act, Title 45 U.S.C.A. § 55, and consequently is void. That section relates to contracts, the purpose of which is to exempt the carrier from liability under the chapter and it declares such contracts void. The same contention which the plaintiff raises here was raised in Callen v. Pennsylvania Railroad Co., 332 U.S. 625, at l. c. 631,

68 S.Ct. 296, at 1. c. 298 wherein the court held:

" * * * It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is a liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." We therefore rule that release was permissible under Title 45 U.S.C.A. § 55.

As to the plaintiff-appellant's contention that he was not obliged to make a tender or offer to pay the sum he had received in settlement, the rule as stated in 76 C.J.S. Release § 37, p. 663, is: "Generally a releasor who seeks to avoid the effect of his release must restore the status quo by restoring or tendering the consideration received by him, if it is of value."

The question, however, is one to be decided by federal rather than state law. Cleghorn v. Terminal Railroad Ass'n of St. Louis, Mo., 289 S.W.2d 13. We are cited by the plaintiff to Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575, but the court in that case stated that the agreement it was considering was not a compromise and settlement of plaintiff's claim. Another case cited by the plaintiff is Irish v. Central Vermont Railway, Inc., 2 Cir., 164 F.2d 837. In that case the court held that the release signed related to and only discharged the carrier for the employee's wages up to the date of its signing.

There is no doubt that both parties sought to and did in the instant case execute a full release of any right of action the plaintiff had by reason of his fall. The law as it relates to recission of such a release is set out in Graham v. Atchison, T. & S. F. Ry. Co., 176 F.2d 819, 1. c. 826 wherein the court stated:

"Except where fraud enters into the execution of a release, recission must be timely and a tender of the consideration received for the release must be made. * * *" The reason for such a rule is apparent for one should not be allowed to keep the fruits of his agreement while attempting to repudiate it. We hold therefore that the defendant was fully released by the plaintiff and that the release could not be set aside since plaintiff failed to return or tender back consideration he had received.

The conclusion we have reached is determinative of the case. Therefore we need not consider whether or not the evidence relating to plaintiff's fall was sufficient to make a case of negligence submissible to the jury.

The judgment is affirmed.

ANDERSON and RUDDY, JJ., concur.