Charles T. SELSER, Plaintiff-Appellant,

v.

PACIFIC MOTOR TRUCKING CO., and Southern Pacific Transportation Company, Defendants-Appellees.

No. 85-3018
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1985.

William P. Rutledge, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Harry S. Hardin, III, Richard J. Tyler, New Orleans, La., for defendants-appellees.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is an appeal from a grant of summary judgment against the appellant Selser on his FELA claim. Selser is employed as a truck driver by Pacific Motor Trucking Company, a wholly owned subsidiary of Southern Pacific Transportation Company which does business as a railroad. Because Selser failed to raise a genuine issue of material fact as to whether his employer, PMT, and PMT's parent company, Southern, illegally intended to exempt Southern from FELA liability by creating their parent/subsidiary corporate structure, we affirm.

## I

The appellant, Charles Selser, filed this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, to recover for an injury he allegedly suffered during the course of his employment. He sued Southern Pacific Transportation Company (Southern) and its wholly owned subsidiary, Pacific Motor Trucking Company (PMT). Southern does business as a railroad, while PMT is a motor carrier, regulated by the Interstate Commerce Commission, that does not own, operate or manage any railroad equipment or facilities. Selser was, at all times relevant to this suit, an employee on PMT's payroll. Because only railroads are subject to FELA liability, 45 U.S.C. § 51, Selser contended in the district court that PMT was the alter ego of Southern and also that he was a "joint" or borrowed servant or a "subservant" of Southern.

PMT has its own board of directors and nobody has ever served as a management-level officer for both companies simultaneously. Uncontraverted deposition evidence indicates that only one officer has ever moved from one company to the other: PMT's current president and chairman was formerly a Southern vice president. PMT formulates and implements its own strategies and policies and has its own sales, administrative and operating staff. It makes its own personnel decisions and maintains its own separate payroll and personnel records. Southern has no right to participate, and does not participate, in PMT's day-to-day operations and management or in the establishment of PMT's work procedures.

Some of Southern's and PMT's functions are, however, performed by common personnel. The two companies share executive, engineering, communication, police, contract and legal services. PMT pays Southern for these services on a monthly basis. Southern also leases land to PMT for use as a trucking terminal.

PMT performs some services for its customers that bring it into contact with railroads. One of these services is called "intermodal shipping." PMT picks up the goods being shipped and delivers them to a railroad. At the other end of the line, PMT picks up the goods and delivers them to their destination. PMT uses many railroads, including Southern, for this service. In addition, Southern does the great majority of its intermodal shipping for motor carriers other than PMT.

PMT also loads and unloads Southern's railcars at Southern's Louisiana facility. Pursuant to contract, PMT uses cranes to load trailers and containers onto railcars and to unload them. PMT employees also secure the cargo on the railcars, and use tractors to move the cargo into position for loading. PMT bids for these contracts, sometimes unsuccessfully, against companies not affiliated with Southern. The majority of PMT's revenues derive from sources other than Southern.

The district court granted the appellees' motion for summary judgment. The court found that PMT is not a railroad, that Selser was employed solely by PMT and that PMT and Southern are not alter egos. Selser filed a timely notice of appeal.

## II

Fed.R.Civ.P. 56(c) provides for the reviewing of motions for summary judgment; in pertinent part the rule reads:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law....

The burden is on the moving party to establish that there is no genuine issue of fact and the party opposing the motion should be given the benefit of every reasonable inference in his favor. *State of Pennsylvania v. Curtiss National Bank of Miami Springs*, 427 F.2d 395, 400 (5th Cir.1970). However, the nonmoving party may not rely on the mere allegations of the pleadings to establish an issue of fact.

*Pignons S.A. v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981).

Accordingly, on appeal we view all materials in the light most favorable to the appellant, Selser, to determine if there is any issue of material fact. If no such issue exists, we must then determine if the appellees are entitled to judgment as a matter of law. *Id.*

### III

Selser appeals only the district court's finding that PMT and Southern are not alter egos. He contends that PMT did not have a corporate existence independent from Southern and, thus, that PMT was Southern's alter ego. Accordingly, he concludes that he was in fact a railroad employee and may sue under the FELA.

■ Ordinarily, stockholders and parent corporations are not liable for a corporation's debts. *Baker v. Raymond International, Inc.*, 656 F.2d 173, 179 (5th Cir. 1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982). "Under exceptional circumstances, however, the courts will exercise their equitable power to hold the controlling parties liable for the obligations of their instrumentality." *Id.* Thus, "a principal (usually a parent company) may so dominate the activities of a corporation that it is necessary to treat the dominated corporation as an agent of the principal." *Id.* at 180; *see Krivo Industrial Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098, 1102–03 (5th Cir.1973), *modified on other grounds*, 490 F.2d 916 (1974) (per curiam) (applying Alabama law). Selser asserts that Southern dominates PMT to such an extent that PMT should be considered no more than a division of Southern for the purposes of FELA liability in this case; we do not agree.

In this action for statutory relief, the ultimate question is the meaning of the legislation creating the rights in question. The FELA specifies when a contract or contract-like "device" may be set aside: "Any contract, rule, regulation, or device whatsoever, *the purpose or intent of* which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void...." 45 U.S.C. § 55 (emphasis supplied). "Congress wanted [section 55] to have the full effect that its comprehensive language implies." *Duncan v. Thompson*, 315 U.S. 1, 62 S.Ct. 422, 424, 86 L.Ed. 575 (1942). Whether the independent corporate structure of PMT is to be disregarded for FELA purposes is therefore determined entirely by the "comprehensive language" of section 55.

■ We must take care to confine the benefits conferred by the FELA to its special class of beneficiaries intended by Congress in passing this legislation. This legislation was specifically designed to override the general liability principles of the common law in order to confer extensive benefits on the special class of common carrier workers. *Palmer v. Commonwealth of Massachusetts*, 308 U.S. 79, 60 S.Ct. 34, 37, 84 L.Ed. 93 (1939). By its terms, section 55 voids all devices, and only those devices, whose actual *purpose or intent* is to enable a carrier to exempt itself from liability; the comprehensive language of section 55 limits the section's applicability. *Dougall v. Spokane P. & S. Ry. Co.*, 207 F.2d 843 (9th Cir.1953). As discussed below, Selser has raised no genuine issue of material fact as to whether the purpose or intent of PMT or Southern in creating their parent/subsidiary relationship was to exempt Southern from FELA liability; we therefore affirm the district court's grant of summary judgment.

Selser argues that Southern "dominated" PMT, and that PMT should accordingly be treated as merely a division of Southern. As noted above, section 55 encodes the "domination" doctrine to the extent the FELA permits the use of this doctrine to pierce the corporate veil; common law "domination" is therefore relevant only to the extent to which it may evidence intent or purpose to exempt the parent here from FELA liability. The question whether a parent corporation dominates its subsidiary

does not turn upon any one fact. *See Baker*, 656 F.2d at 180–81. The fact that one corporation owns all, some or none of the other's stock is not decisive. *Id.* at 181; *Krivo*, 483 F.2d at 1104. Similarly, the parent may properly exercise its "right to choose directors and set general policies" without forfeiting its limited liability. *Baker*, 656 F.2d at 180 (citing *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991, 994 (5th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972)).

■ Selser has not made a sufficient showing to survive summary judgment. In the district court, the appellees submitted affidavits conclusively showing that Southern exercised little, if any, control over PMT's operations. Therefore, even if common law "dominance" may be considered evidence of the "purpose or intent" proscribed by section 55, no genuine issue of material fact exists unless the appellees' affidavits are appropriately countered by Selser. The burden shifted to Selser to establish a genuine issue of material fact, and Selser may not rely on the allegations of his complaint for this purpose. *See Nicholas Acoustics & Specialty Co. v. H & M Construction Co.*, 695 F.2d 839, 844 (5th Cir.1983). Selser cites three factors to show Southern's dominance of PMT: Southern's ownership of PMT's stock, PMT's loading and unloading of Southern's railcars and Southern's provision of services to PMT. The first alone is not, of course, sufficient. *Krivo*, 483 F.2d at 1104. The mere fact that PMT performs services at Southern's facility does not show domination because PMT must bid competitively for Southern's business and because PMT does such business for other railroads. *See, e.g., Miles v. American Telephone & Telegraph Co.*, 703 F.2d 193, 195–97 (5th Cir.1983); *cf. Baker*, 656 F.2d at 180 (considering as a factor whether subservient corporation gets *all* of its business from dominant corporation). It can hardly be said that PMT exists solely for Southern's benefit. Similarly, Southern's provision of services to PMT does not show domination or intent. The appellees produced evidence that this arrangement serves to cut costs

and that PMT still sets its own policies and controls its own operations.

Selser's use of precedent is unpersuasive. He first points out that *Baker* found that a factual dispute existed on the issue of domination. *See* 656 F.2d at 180. This does not, of course, show that one exists here, still less that there is an issue of "intent." To be sure, *Baker* did not actually reach the "domination" issue because it found the jury charge on the issue of domination to be improper. *See id.* By contrast, the panel in *Krivo* upheld a directed verdict even though the parent corporation had taken an active role in the management and control of the subsidiary, interfered at times in the subsidiary's operations, and had "the capacity to exert great pressure and influence." 483 F.2d at 1110, 1114.

Selser also contends that he may in time have been able to develop further proof of domination. This argument is spurious. *See Golden Oil Co. v. Exxon Co., U.S.A.*, 543 F.2d 548, 551 & n. 4 (5th Cir.1976). Selser did not begin his discovery until two days before the discovery cutoff, almost nine months after filing suit, and almost six months after the court set the cutoff date. Selser received about one and one-half months after the appellees filed their motion for summary judgment in which to submit materials in response.

■ Finally, Selser argues that the affidavits submitted by the appellees were not made by persons having personal knowledge of the matters stated therein. Fed.R. Civ.P. 56(e). However, all of the affiants stated that they had personal knowledge of the matters to which they swore as a result of their positions with PMT or Southern. Selser does not point to any evidence to the contrary, although he deposed all of the affiants. This argument is therefore insubstantial. Accordingly, we affirm the district court's grant of summary judgment in favor of the appellees.

**IV**

■ The appellees request an award of costs and attorneys' fees on the ground

that this appeal is frivolous. Such an award is permitted under 28 U.S.C. § 1912 and Fed.R.App.P. 38. *Lonsdale v. L.L. Smelser,* 709 F.2d 910, 911 (5th Cir.1983). Sanctions are appropriate when an appeal "involves legal points not arguable on their merits." *Hagerty v. Succession of Clement,* 749 F.2d 217, 222 (5th Cir.1984) (citing *Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983)). Sanctions may be awarded against the attorney as well as the appellant. 749 F.2d at 222–23; *see* 28 U.S.C. § 1927.

The appellees' request is not wholly without merit. As indicated above, Selser has not pointed to any evidence that Southern actually controlled PMT's operations. Furthermore, Selser's original brief, though colorful reading, cites absolutely no authority, and very little record evidence. Even in his reply brief, Selser makes little effort to point to any evidence in support of his theory. As the appellees aptly note, "Selser makes only broadbrush conclusory assertions that somewhere in the record a genuine issue as to any material fact can be found, leaving the task of divining such facts to this Court." *See Hagerty,* 749 F.2d at 223. If this case were an appeal from a judgment after a trial, we might well impose sanctions.

On the facts of this case, however, we do not impose sanctions. What might suffice to raise an issue of corporate "purpose" or "intent" is not governed by any easily applied formula. Because this is an appeal from a grant of summary judgment, it cannot readily be said that Selser's contentions "are long-settled against him." *Hagerty,* 749 F.2d at 222. We therefore decline to impose sanctions.

## V

Because we find that Selser has failed to raise genuine issues of material fact regarding whether the corporations in this case were alter egos for FELA purposes, we affirm the district court's grant of summary judgment on this issue. However, we decline to impose sanctions on Selser for making this appeal.

AFFIRMED.