RODNEY L. DANIELS, Plaintiff-Appellant, v. UNION PACIFIC RAILROAD COMPANY, Defendant-Appellee.

First District (1st Division)    No. 1—08—2010

Opinion filed March 9, 2009.

Law Offices of William B. Kohn, of Chicago (William B. Kohn, of counsel), and Pratt & Tobin, P.C. (Gregory M. Tobin, of counsel), and Schmieder Law Firm, LLC (Christie R. Schmieder, of counsel), both of East Alton, for appellant.

Union Pacific Railroad Company, of Chicago (Connie S. Roseberry, of counsel), for appellee.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Rodney L. Daniels, age 57, filed a two-count complaint under the Federal Employers' Liability Act (FELA) (45 U.S.C. §§51 through 60 (2000)), against his employer, defendant Union Pacific Railroad Company, seeking damages for permanent injuries to his back. Count I of plaintiff's complaint alleged that he injured his back on October 3, 2007, when "the high-rail wheels dropped on the work truck he was in and [he] was caused to be severely and permanently injured." Count II of plaintiff's complaint alleged that his back was permanently "injured when he was subjected to numerous repetitive traumas while repairing [d]efendant's railroad tracks" during his employment with defendant from 1973 through 2007.[1]

The trial court granted defendant's motion to dismiss plaintiff's complaint, with prejudice, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2000)), based upon a release obtained by defendant as part of a settlement for a back injury plaintiff suffered in 1995. Plaintiff filed a motion for reconsideration, which was denied on June 23, 2008. Plaintiff appeals from that order.

The parties agree that because this case arises under FELA, federal law governs any substantive legal issues raised by this appeal. *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 361, 96 L. Ed. 398, 403, 72 S. Ct. 312, 314 (1952). The parties also agree that FELA, as interpreted by the United States Supreme Court, prohibits general releases of FELA claims. The question raised by this appeal is whether the specific language of the release signed by plaintiff in settlement of his 1995 injury bars the claims upon which this action is based.

The federal courts have diverged on the issue of whether FELA permits a release of only *known injuries* or conditions that exist at the time of the release, as the Court of Appeals for the Sixth Circuit first held in *Babbitt v. Norfolk & Western Ry. Co.*, 104 F.3d 89 (6th Cir. 1997), or whether FELA also permits the release of *known risks* of future injuries or conditions, as the Court of Appeals for the Third Circuit first held in *Wicker v. Consolidated R. Corp.*, 142 F.3d 690 (3d Cir. 1998). Under either interpretation, we find that under the circumstances of this appeal the subject release does not bar count I, does

---

[1]At the outset, we note that the record in this case is devoid of any facts indicating what job task plaintiff performed in a repetitive nature which caused plaintiff's alleged injuries as a result of repetitive trauma over the span of his employment with defendant railroad.

not bar plaintiff's claims for postrelease repetitive trauma, but does bar plaintiff's claims for prerelease repetitive trauma. Accordingly, we affirm in part, reverse in part, and remand to the trial court.

## BACKGROUND

Plaintiff was born on September 16, 1951, and has worked most of his adult life for defendant. He began working for defendant as a laborer in December 1973 at the age of 22. In 1981, at the age of 30, he began working as a gang foreman.

On August 4, 1995, plaintiff suffered a back injury while working for defendant in Momence, Illinois. At the time of his injury, plaintiff was driving railroad spikes with a hydraulic "spike driver." Specifically, plaintiff's injury occurred when he lifted the approximately 70-pound "spike driver" over the track rail and attempted to swing the device over to the opposite side of the rail. On the day of his injury, plaintiff filed an injury report with defendant's claims department. On August 7, 1995, plaintiff provided a recorded interview with Jim Crawford, a representative of defendant's claims department. Most of the facts with regard to plaintiff's August 1995 injury are taken from that interview, a transcript of which is contained in the record of this case.

Plaintiff began experiencing lower-back aches which radiated throughout his left leg as a result of the August 1995 injury. He experienced sharp pains in the early mornings and had trouble getting out of bed. Plaintiff treated with his family physician, Dr. Francis O'Brien, an internist of Rensselaer, Indiana, as a result of his injuries. Dr. O'Brien diagnosed plaintiff with a lower-back sprain.

Plaintiff's claim against defendant with regard to the August 1995 injury was settled in May 1997. The settlement agreement incorporated a document entitled "Release of All Claims." The document is one page in length, initialed by plaintiff four times, written in part in plaintiff's own handwriting, and signed by plaintiff at the bottom. The document states, in relevant part:

> "For the payment of Forty Seven Thousand Five Hundred Dollars ($47,500.00), received by me, I hereby release [defendant] \*\*\* and all other parties, from all claims and liability of every kind or nature, INCLUDING CLAIMS FOR INJURIES WHICH ARE UNKNOWN TO ME AT THE PRESENT TIME, arising out of an accident on or about the 4th day of August, 1995 at or near Momence, Illinois, resulting in personal injury which I claim to be permanent in nature and I understand this release covers all future consequences of my accident and injuries and of all medical treatment I may hereafter receive.
>
> The above payment is made and accepted in settlement of my claims, and is not an admission of fault or liability.

The payment of the above sum is the only consideration for this release. No promise of future employment, or other promises, have been made to me in connection with this settlement.

I HAVE READ THE ABOVE, AND UNDERSTAND IT IS A FULL RELEASE OF ALL MY CLAIMS."

Plaintiff continued to work as a gang foreman for defendant after his 1995 injury and the 1997 settlement of the claim made for the 1995 injury.

As noted, plaintiff filed the instant two-count complaint under FELA against defendant seeking damages for permanent injuries to his back. Count I of plaintiff's complaint alleged that he injured his back on October 3, 2007, when "the high-rail wheels dropped on the work truck he was in and [he] was caused to be severely and permanently injured." Count II of plaintiff's complaint alleged that his back was permanently "injured when he was subjected to numerous repetitive traumas while repairing [d]efendant's railroad tracks" during his employment with defendant from 1973 through 2007.

As noted, defendant filed a motion to dismiss plaintiff's FELA complaint pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2000)), based upon the above-referenced release obtained by defendant as part of the 1997 settlement. On April 23, 2008, the trial court granted defendant's motion to dismiss. The trial court's April 23, 2008, order states:

"The [p]laintiff filed a FELA complaint against the [d]efendant seeking damages for repetitive trauma injuries to his back while working as a track laborer for the [d]efendant railroad. Count I seeks recovery for severe and permanent injuries to the [p]laintiff's back arising from an incident on October 3, 2007. Count II seeks recovery for numerous repetitive trauma[s] sustained throughout the [p]laintiff's employment from 1973 to 2007.

The [d]efendant contends that the [p]laintiff filed a similar claim for back injuries stemming from an accident in August of 1995. When the matter was settled in May of 1997, the [p]laintiff signed a release. The [d]efendant contends that the release, which states that it covers permanent personal injuries, all future consequences of the August 4, 1995 accident and all future medical treatment, bars the instant claims.

The [p]laintiff contends that while a release which addresses a claim for a specific injury is valid under FELA, however, a release which attempts to extinguish potential future claims from unknown injuries are [sic] not valid. The [p]laintiff points out that the release does not set forth a particular injury and does not specify that it is for a 'back' injury. It was a general release that purported to release all claims and liability of every kind including for injuries unknown

to the [p]laintiff. Thus, this release is unenforceable under FELA. However, the [p]laintiff argues that even if the release here was enforceable, it does not bar the instant claims. The only disputed claim at the time that the release was executed was a lower back injury and thus, the release only related to that injury and could not exempt the current claims which are different.

The [c]ourt has read the motion, response and reply, as well as, all of the supporting materials tendered herewith.

[ORDER:]

A release signed for consideration in settlement of a controversy for a specific injury is valid under FELA. The subject release, which is clear, unambiguous and not overly broad, arose in the settlement of the [p]laintiff's 1995 claim for permanent back injuries. The instant claim is also for permanent back injuries. The injuries at issue in both the release and the instant claim are the same and the release contemplated the risks of future back injuries. Accordingly, the instant release is valid under FELA and applicable to bar the instant action.

Based on the foregoing, [d]efendant's 2—619(a)(9) [m]otion to [d]ismiss the [p]laintiff's [c]omplaint is granted, with prejudice."

Plaintiff filed a motion for reconsideration of the trial court's order, which was denied on June 23, 2008. The trial court's June 23, 2008, order states:

"The [p]laintiff filed a FELA complaint against the [d]efendant seeking damages for repetitive trauma injuries to his back while working as a track laborer for the [d]efendant railroad. Count I sought recovery for severe and permanent injuries to the [p]laintiff's back arising from an incident on October 3, 2007. Count II sought recovery for numerous repetitive trauma[s] sustained throughout the [p]laintiff's employment from 1973 to 2007. The [d]efendant filed a [m]otion to [d]ismiss contending that the [p]laintiff filed a similar claim for back injuries stemming from an accident in August of 1995, which was settled in May of 1997, and thereafter the [p]laintiff signed a release. The [d]efendant contended that the release, which states that it covers permanent personal injuries, all future consequences of the August 4, 1995 accident and all future medical treatment, bars the instant claims.

On April 23, 2008, the [c]ourt entered its *** [o]rder granting the [d]efendant's motion, finding that the release barred the instant claim. The [p]laintiff now seeks reconsideration of that ruling. The [p]laintiff argues that the release was not valid under FELA. The [p]laintiff maintains that at least there is a question of fact as to whether there was a new injury in 2007.

The [c]ourt has read the motion, a response and reply having been deemed unnecessary, as well as, all of the supporting materials tendered therewith.

[ORDER:]

The [p]laintiff merely re-argues the same position he set forth in regard to the underlying motion. As the [c]ourt previously stated, a release signed for consideration in settlement of a controversy for a specific injury is valid under FELA and the subject release, which is clear, unambiguous and not overly broad, arose in the settlement of the [p]laintiff's 1995 claim for permanent back injuries. The instant claim is also for permanent back injuries, thus, the injuries at issue in both the release and the instant claim are the same and the release contemplated the risks of future back injuries. Accordingly, the instant release is valid under FELA and applicable to bar the instant action and the April 23, 2008 ruling stands.

Based on the foregoing, [p]laintiff's [m]otion for [r]econsideration is denied."

As noted, this appeal follows the trial court's denial of plaintiff's motion for reconsideration.

## ANALYSIS

As noted, the trial court in the case at bar granted defendant's motion to dismiss plaintiff's complaint pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2000)). Section 2—619(a)(9) allows for dismissal where the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 2000). "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). "Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward." *Travis*, 335 Ill. App. 3d at 1174. In a section 2—619 motion to dismiss, the defendant bears the burden of proving the affirmative defense. *Luise, Inc. v. Village of Skokie*, 335 Ill. App. 3d 672, 685 (2003). When reviewing a section 2—619 motion to dismiss, this court " 'must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law.' " *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008), quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). "On appeal from a ruling on a section 2—619(a)(9) motion, the standard of review is *de novo*." *Travis*, 335 Ill. App. 3d at 1174.

On appeal, plaintiff argues that the trial court erred by granting defendant's motion to dismiss his complaint pursuant to section 2—619(a)(9) of the Code because the 1997 release did not bar the

complaint in the instant case. Specifically, plaintiff argues that the release could not be used to immunize defendant from liability for work injuries plaintiff suffered after the signing of the release.

Defendant counters that the trial court properly granted its motion to dismiss because the 1997 release obtained as part of the settlement for plaintiff's 1995 back injury contemplated the injuries for which plaintiff now seeks damages.

As noted, federal law governs substantive issues in cases brought under FELA. 45 U.S.C. §51 provides that the purpose of the Act is to hold a negligent employer liable for injuries suffered by an employee. *Babbitt v. Norfolk & Western Ry. Co.*, 104 F.3d 89, 91 (6th Cir. 1997). Section 51 states:

> "Every common carrier by railroad while engaging in [interstate] commerce *** shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce *** due to its negligence."

In addition, section 55 of FELA explicitly states that any contract attempting to exempt a carrier from liability created by FELA is void. Section 55 of FELA provides:

> "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

Hence, the purpose of FELA, as stated in sections 51 and 55, is to require negligent railroads to assume liability for injuries to employees in the course of their employment. *Babbitt*, 104 F.3d at 91-92 (citing *Dice*, 342 U.S. at 362, 96 L. Ed. at 403, 72 S. Ct. at 314 (general policy of FELA is "to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers"), and *Taylor v. Wells Fargo & Co.*, 220 F. 796, 797 (5th Cir. 1915) (noting that "[f]or such a carrier to be able *** to exempt itself from liability *** would be in plain contravention of the explicit provision[s]" of FELA)).

45 U.S.C. §55 is not limitless, however. The United States Supreme Court has held that a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability. *Callen v.*

*Pennsylvania R.R. Co.,* 332 U.S. 625, 631, 92 L. Ed. 242, 246, 68 S. Ct. 296, 298-99 (1948).

The question of what constitutes a permissible settlement/compromise of a FELA claim versus an impermissible exemption has led to a divergence in the federal courts. Specifically, the federal courts have diverged on the issue of whether FELA permits releases for *known injuries* or conditions that exist at the time of the release, as the Sixth Circuit first held in *Babbitt,* 104 F.3d 89, or whether FELA also permits the release of *known risks* of future injuries or conditions, as the Third Circuit first held in *Wicker,* 142 F.3d 690.

In *Babbitt,* the court determined whether the release language in an early retirement agreement prevented a FELA action based upon the plaintiff's subsequent claim of hearing loss. *Babbitt,* 104 F.3d at 90. The agreement sought to release the railroad defendant from "all claims, known and unknown, for which the company may ever be held liable." *Babbitt,* 104 F.3d at 91. The court determined that such a release was contrary to section 55 and reversed the district court's finding of summary judgment in the defendant's favor. *Babbitt,* 104 F.3d at 93. In its analysis, the court considered three United States Supreme Court cases that involved releases and subsequent FELA claims: *Callen v. Pennsylvania R.R. Co.,* 332 U.S. 625, 92 L. Ed. 242, 68 S. Ct. 296 (1948); *Philadelphia, Baltimore & Washington R.R. Co. v. Schubert,* 224 U.S. 603, 56 L. Ed. 911, 32 S. Ct. 589 (1912); and *Duncan v. Thompson,* 315 U.S. 1, 86 L. Ed. 575, 62 S. Ct. 422 (1942).

In *Callen,* the plaintiff sued for injuries he sustained in a railroad accident after he signed a general release agreement that waived any claim for injuries he sustained in the accident in exchange for a cash payment. *Callen,* 332 U.S. at 626-27, 92 L. Ed. at 244, 68 S. Ct. at 296-97. The Court upheld the validity of the release because it was "not a device to exempt from liability but [was] a means of compromising a claimed liability." *Callen,* 332 U.S. at 631, 92 L. Ed. at 246, 68 S. Ct. at 298. The Court recognized that section 55 is not violated by a release that settles a "controversy" with regard to the employer's liability and the extent of that liability for a particular accident or exposure. *Callen,* 332 U.S. at 631, 92 L. Ed. at 246, 68 S. Ct. at 298-99.

In *Schubert,* the plaintiff contributed a portion of his salary to a "relief fund" until he was injured on the job. *Schubert,* 224 U.S. at 606, 56 L. Ed. at 914, 32 S. Ct. at 589. He received benefits from the fund, but then filed a FELA claim for damages. *Schubert,* 224 U.S. at 608, 56 L. Ed. at 914, 32 S. Ct. at 590. The railroad argued that the plaintiff's claims were barred because he agreed, as a member of the relief fund, that if he collected from the fund, he would release all personal injury claims against the railroad. *Schubert,* 224 U.S. at 606-

08, 56 L. Ed. at 914, 32 S. Ct. at 589-90. The Supreme Court ruled that the release did not preclude the plaintiff's claim for damages because the purpose of the general release was to provide immunity to the railroad for any injury resulting in collection from the relief fund, in direct violation of section 55. *Schubert*, 224 U.S. at 611-12, 56 L. Ed. at 916, 32 S. Ct. at 591.

In *Duncan*, the plaintiff was injured after he fell from a locomotive. *Duncan*, 315 U.S. at 2, 86 L. Ed. at 576, 62 S. Ct. at 422. When plaintiff continued to suffer from his injuries, his employer paid $600 toward his living expenses in exchange for his agreement to "endeavor, in good faith, to adjust and settle any claim *** 'for injuries' *** without resorting to litigation." *Duncan*, 315 U.S. at 2-3, 86 L. Ed. at 577, 32 S. Ct. at 422. As the *Babbitt* court summarized, the United States Supreme Court ruled that the release did not bar the plaintiff's later FELA claim because "[t]he money that was exchanged was earmarked for living expenses, not settlement purposes, and the promise that was procured was given in exchange for a promise not to sue." *Babbitt*, 104 F.3d at 92, citing *Duncan*, 315 U.S. at 7-8, 86 L. Ed. at 579, 32 S. Ct. at 424-25. The *Babbitt* court observed that, unlike *Callen*, in which the railroad and employee entered into an agreement to settle the railroad's liability for the plaintiff's specific injuries, *Duncan* and *Schubert* involved general releases that "granted general immunity to the railroad, as opposed to addressing a specific instance of disputed liability." *Babbitt*, 104 F.3d at 92-93. The *Babbitt* court further explained:

> "Consequently, where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. §55 precludes the employer from claiming the release as a bar to liability. *Schubert*, 224 U.S. at 612[, 56 L. Ed. at 916], 32 S. Ct. at 591-92. To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Babbitt*, 104 F.3d at 93.

In *Wicker*, the court considered the enforceability of a release that had been part of a compromise between the railroad defendant and each of five plaintiffs in subsequent FELA actions brought by the plaintiffs. *Wicker*, 142 F.3d at 692. Each plaintiff signed a release agreement that purported to "settle all claims for all injuries past and future." *Wicker*, 142 F.3d at 692. Subsequent to the signing of the

release, the plaintiffs "suffered injuries as a result of exposure to toxic chemicals" at one of the railroad's plants. *Wicker*, 142 F.3d at 692. The plaintiffs filed FELA complaints and alleged that the releases were unenforceable because they violated 45 U.S.C. §55. *Wicker*, 142 F.3d at 694. In response, the railroad argued that the releases clearly settled all past and future claims and that, regardless, each plaintiff suffered symptoms of chemical-related injuries before signing the releases and therefore was "on notice of a potential health problem at that time." *Wicker*, 142 F.3d at 695.

After reviewing the history of FELA, the *Wicker* court considered *Callen, Duncan,* and *Schubert* and concluded:

"The language [of *Callen*] is clear. Releases are not *per se* invalid under FELA. Although the Court did not explain what will qualify as a 'compromis[e] [of] a claimed liability' it did say that parties may settle '[w]here controversies exist as to whether there is liability, and if so for how much.' The explicit requirement is that a controversy must exist." *Wicker*, 142 F.3d at 697.

The *Wicker* court then considered the *Babbitt* case and noted the advantage of predictability that a bright-line test like the *Babbitt* court established would provide. *Wicker*, 142 F.3d at 700. The *Wicker* court rejected *Babbitt's* rule, however, noting that the parties to a claim might specifically comprehend future risks and potential liabilities and make them subject to a settlement. *Wicker*, 142 F.3d at 700-01. Instead, the *Wicker* court allowed a release that covered a *known risk* under FELA even if the specific injury were not known at the time of the release. *Wicker*, 142 F.3d at 701. The court noted that an evaluation of the parties' intent at the time of the execution of a release is an essential element in the inquiry of the release's enforceability. *Wicker*, 142 F.3d at 701.

Per the foregoing, it is clear that the United States Supreme Court, the *Babbitt* court, and the *Wicker* court all require that a release be pursuant to a "controversy" with regard to the employer's liability and the extent of that liability for a particular accident or exposure. Accordingly, releases under FELA must relate to specific claims. Even under the more expansive holding of *Wicker*, which permits releases of *known risks*, releases must address a specific instance of disputed liability. In other words, any intention to prevent a claim unrelated to the one compromised would be void under 45 U.S.C. §55.

We now apply the foregoing to the case at bar. In arriving at our determination of whether the specific language of the release signed by plaintiff in settlement of his 1995 injury covers the claims upon which this action is based, we will consider each of the two counts contained in plaintiff's instant complaint separately.

As noted, plaintiff suffered a back injury while working for defendant on August 4, 1995. Plaintiff settled his claim against defendant with regard to the August 1995 injury in May 1997. The settlement agreement incorporated a document entitled a "Release of All Claims," which was initialed by plaintiff four times, written in part in plaintiff's own handwriting, and signed by plaintiff. The 1997 release states, in relevant part:

"I hereby release [defendant] *** from all claims and liability of every kind or nature, INCLUDING CLAIMS FOR INJURIES WHICH ARE UNKNOWN TO ME AT THE PRESENT TIME, arising out of an accident on or about the 4th day of August, 1995 at or near Momence, Illinois, *** and I understand this release covers all future consequences of my accident and injuries and of all medical treatment I may hereafter receive."

As noted, count I of plaintiff's complaint in the case at bar sought damages for permanent injuries plaintiff suffered to his back on October 3, 2007, when "the high-rail wheels dropped on the work truck he was in and [he] was caused to be severely and permanently injured." Count II of plaintiff's complaint sought damages for permanent injuries to his back because "he was subjected to numerous repetitive traumas while repairing [d]efendant's railroad tracks" during his employment with defendant from 1973 through 2007.

■ We find that the trial court erred by granting defendant's motion to dismiss with regard to count I of plaintiff's complaint on the basis that the 1997 release barred plaintiff's claim for injuries allegedly suffered on October 3, 2007. As noted above, a release, to bar a subsequent FELA claim, must relate to a specific instance of disputed liability. As the alleged October 3, 2007, work-related accident occurred approximately 10 years after the 1997 release, the release could not have addressed plaintiff's alleged 2007 work injury.

Furthermore, the 1997 release could not bar count I of plaintiff's complaint even under *Wicker*'s more expansive rule, permitting releases of *known risks*. As the *Wicker* court noted, an evaluation of the parties' intent at the time of the execution of a release is as essential element in the inquiry of a release's enforceability. *Wicker*, 142 F.3d at 701. The parties to this appeal could not have intended that the 1997 release bar an action for injuries plaintiff suffered in 2007, as a contemplation of the 2007 injury was an impossibility at the time of the signing of the 1997 release.

The trial court placed great emphasis on the fact that the release pertained to back injuries the plaintiff claimed to be permanent in nature, and the fact that plaintiff's FELA complaint also sought damages for permanent back injuries. However, the alleged 2007 injury

and the 1995 injury are separate and distinct events, and the release obtained pursuant to settlement of the 1995 injury could not properly bar an action for the 2007 injury, which was unknown at the time of the signing of the release.

Furthermore, the trial court erred by dismissing count I of plaintiff's complaint because it had insufficient factual information before it to make the determination that plaintiff's injuries due to the 1995 work-related accident and plaintiff's alleged injuries due to the 2007 accident were identical; therefore, the trial court erred by finding that the 1997 release could be interposed to preclude count I of plaintiff's FELA complaint based upon that finding. As noted, defendant moved to dismiss plaintiff's complaint pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2000)). The procedural posture of this case prior to the trial court's dismissal rendered it impossible for the trial court to determine that the 1995 and 2007 injuries were identical. No evidentiary hearing had been had and no evidence introduced, by way of medical testimony or otherwise, from which the trial court could have made the finding that the injuries were identical. Therefore, the trial court's finding that the 1997 release barred plaintiff's FELA claim for injuries suffered in 2007 must be reversed.

■ The trial court also erred by finding that plaintiff's claim for injuries due to repetitive trauma after the signing of the 1997 release was precluded; however, the trial court correctly found that the repetitive trauma suffered prior to the release was precluded. As noted, the 1997 release states, in relevant part:

"I hereby release [defendant] *** from all claims and liability of every kind or nature, INCLUDING CLAIMS FOR INJURIES WHICH ARE UNKNOWN TO ME AT THE PRESENT TIME, arising out of an accident on or about the 4th day of August, 1995 at or near Momence, Illinois, *** and I understand this release covers all future consequences of my accident and injuries and of all medical treatment I may hereafter receive."

As noted, count II of plaintiff's FELA complaint alleged that plaintiff's back was permanently "injured when he was subjected to *** repetitive trauma[ ] while repairing [d]efendant's railroad tracks" during his employment with defendant from 1973 through 2007. Accordingly, count II of plaintiff's complaint admits that plaintiff suffered the alleged repetitive trauma prior to the signing of the 1997 release. As such, the injuries caused by repetitive trauma prior to the signing of the release were *known injuries* at the time of the signing. Under either *Babbitt* or *Wicker*, a release of *known injuries* is permissible under FELA. However, as noted, the record in this case is devoid

of any facts to indicate what job task plaintiff performed in a repetitive manner to cause plaintiff's alleged injuries as a result of repetitive trauma over the course of his employment with defendant. Further, nothing in the record before us establishes that the postrelease repetitive trauma caused the same injuries for which plaintiff released defendant in 1997. The question of whether the postrelease repetitive trauma caused the same injuries for which plaintiff released defendant in 1997 is a factual issue, which could not be determined upon defendant's section 2—619(a)(9) motion to dismiss. *Czarobski*, 227 Ill. 2d at 369. Due to the insufficiency of the record before us and the procedural posture of this case prior to the trial court's granting of defendant's motion to dismiss, we, unlike the trial court, are unable to reach the conclusion that the injuries plaintiff suffered due to postrelease repetitive trauma are the same for which plaintiff released defendant in 1997. Accordingly, we affirm the trial court's finding with regard to plaintiff's claims for prerelease repetitive trauma injuries, but reverse with regard to the trial court's finding that plaintiff's postrelease repetitive trauma injuries are precluded by the 1997 release.

## CONCLUSION

For the foregoing reasons, the trial court's order finding that count I of plaintiff's FELA complaint is precluded by the 1997 release is reversed. We also reverse the trial court's finding with regard to plaintiff's postrelease repetitive trauma injuries, but affirm with regard to the trial court's finding that plaintiff's prerelease repetitive trauma injuries are precluded by the 1997 release.

Affirmed in part and reversed in part; cause remanded.

WOLFSON and GARCIA, JJ., concur.