Filed 10/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BERNIE CHACON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UNION PACIFIC RAILROAD,<br><br>    Defendant and Respondent. | B299031<br><br>(Los Angeles County<br>Super. Ct. No. BC699433) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William F. Fahey, Judge.  Reversed and remanded with directions.

Marc J. Bern & Partners, D. Shawn Burkley and James West for Plaintiff and Appellant.

Berkes Crane Robinson & Seal, Viiu Spangler Khare, Steven M. Crane, Barbara S. Hodous and Rebecca A. Bellow for Defendant and Respondent.

_____

Bernie Chacon appeals from a judgment against him following a successful motion for judgment on the pleadings by respondent Union Pacific Railroad Company (Union Pacific). Chacon brought this action against Union Pacific in March 2018 under the Federal Employers' Liability Act (FELA), title 45 United States Code section 51 et seq. Chacon alleges that he developed a sarcoma as a result of his exposure to diesel fumes and other carcinogenic substances while working as a diesel mechanic for Union Pacific (and for a predecessor, Southern Pacific) for 31 years.

Chacon previously sued Union Pacific for damages arising from an unrelated 2007 accident. The parties settled that case in 2010. As part of the settlement, Chacon executed a release of all claims arising from his employment, including any claims concerning exposure to toxic chemicals or fumes. That release was the basis for Union Pacific's successful motion for judgment on the pleadings in this case.

The issue in this appeal is whether Chacon could validly release future claims unrelated to the particular injury that was the subject of his prior lawsuit and settlement. Section 5 of FELA (45 U.S.C. § 55) invalidates any contractual provision "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act [FELA]."[1] The United States Supreme Court long ago concluded that this provision does not apply to a release provided in settlement of a specific liability claim. (See *Callen v. Pennsylvania R. Co.* (1948) 332 U.S. 625, 631 (*Callen*).) However, federal law, which governs

---

[1] Subsequent undesignated statutory references are to title 45 of the United States Code.

here, is unsettled as to whether such a release may properly extend to known risks that have not yet caused any injury.

No California case has yet considered this issue. We conclude that the "bright line" rule described in *Babbitt v. Norfolk & W. Ry.* (6th Cir. 1997) 104 F.3d 89 (*Babbitt*) best conforms to the governing statute and to the United States Supreme Court opinions interpreting it. Under that rule, which we partially adopt (with a limitation on the scope of our decision explained below), a release of a FELA claim is valid only to the extent that it applies to a "bargained-for settlement of a known claim for a specific injury." (*Id.* at p. 93.)

The release at issue here purported to extend to future claims unrelated to the particular injury that Chacon previously settled. To that extent it is invalid. We therefore reverse and remand for further proceedings on Chacon's complaint.

## BACKGROUND

### 1. The Release

Chacon worked for Union Pacific[2] as a diesel mechanic from 1976 to 2007. In 2009, Chacon sued Union Pacific in Los Angeles Superior Court for injuries arising from an accident that occurred in 2007.

The parties settled that action in 2010. As part of the settlement, Union Pacific paid Chacon $203,843.81, and Chacon agreed to resign permanently from Union Pacific.

Chacon also provided a broadly worded release (Release). Chacon agreed to release all claims arising from the 2007 accident. In addition, he agreed to release "any and all liabilities,

---

[2] References to Union Pacific include its predecessor, Southern Pacific.

3

causes of action, claims, actions, or rights, known or unknown, arising from [Chacon's] employment." The Release stated that "[i]t is [Chacon's] intent and the intent of Union Pacific to completely and irrevocably settle by this Release and Settlement Agreement, all claims of any kind or nature, arising out of [Chacon's] employment with Union Pacific, including all claims and/or causes of action and/or liability of any kind or nature, for any medical condition or injury arising out of any exposure at any time during [Chacon's] employment to any toxic chemical, and/or environmental substance, condition and/or fumes."

## 2.    Chacon's Complaint

Chacon filed his complaint in this action in March 2018. The complaint asserted a single cause of action for a violation of FELA. Chacon alleged that, while employed at Union Pacific, he was "exposed to various toxic substances and carcinogens, including but not limited to diesel fuel/exhaust, benzene, creosote, and rock/mineral dust and fibers." Chacon claimed that this exposure "caused or contributed to his development of sarcoma of the right thigh." He alleged that Union Pacific was negligent in its use of known carcinogenic materials in its operation.

## 3.    Proceedings in the Trial Court

In April 2019, Union Pacific moved for judgment on the pleadings on the ground that Chacon had released his claims in the Release. In connection with its motion, Union Pacific requested that the trial court take judicial notice of the Release and the related settlement agreement (Settlement Agreement). Chacon did not oppose the request.

The trial court granted the motion. The court concluded that Chacon had the burden to establish that the Release was

4

invalid, but that Chacon had not "provided his declaration, or any other proffered evidence" to show fraud, mutual mistake, or inadequate consideration. The court rejected Chacon's argument that the validity of the Release was a jury question, noting that Chacon had waived jury by failing to deposit jury fees and that, in any event, "it is a judicial function to determine the plain meaning of the language of a written instrument, such as a settlement agreement." The court also rejected Chacon's argument that Union Pacific's answer failed to assert release as an affirmative defense.

The trial court concluded that "the plain meaning of the 2010 release is to bar plaintiff from proceeding against this defendant on a claim of personal injury (cancer) due to his exposure to toxic chemicals. As of the date he signed the settlement agreement and release, plaintiff had not worked for defendant for three years. Nevertheless, he agreed to 'completely and irrevocably settle . . . all claims of any kind or nature arising out of [his] employment . . . including all claims . . . for any medical condition or injury arising out of any exposure at any time during his employment to any toxic chemical.' This language could not be more clear." Citing *Wicker v. CONRAIL* (3d Cir.1998) 142 F.3d 690 (*Wicker*) (discussed further below), the trial court also found that, "in the absence of any facts to the contrary, this agreement evinces an awareness by plaintiff that there was a known risk of toxic chemical exposure during the course of his employment."

## DISCUSSION

### 1. Judicial Notice and the Standard of Review

We review an order granting a motion for judgment on the pleadings as a matter of law, applying the same standard that

5

governs review of an order sustaining a demurrer. (*Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 548.) The grounds for the motion must appear on the face of the complaint or be based on matters that may be judicially noticed. (*Ibid.*) We accept the material allegations of the complaint as true. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 205.)

The basis for Union Pacific's motion for judgment on the pleadings was the Settlement Agreement and the Release. The trial court took judicial notice of those documents at Union Pacific's request, without objection by Chacon. However, Chacon now argues that judicial notice of those documents was improper because there are disputed extrinsic facts "as to the Release's contents."[3]

Under Evidence Code section 452, a court may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) And, under Evidence Code section 453, a trial court "shall" take judicial notice of matters specified in section 452 upon request if the requesting party provides sufficient notice and information. The existence

---

[3] A plaintiff may choose to bring a FELA action in either federal or state court. (§ 56.) State courts apply federal law to substantive issues and state law to procedural issues, unless a state procedure denies a federal right. (*Lund v. San Juaquin Valley Railroad* (2003) 31 Cal.4th 1, 6–7.) Neither party here argues that applying California law on judicial notice and the procedure for interpreting written instruments would deny any substantive federal right. We therefore apply state law to those issues.

and contents of a written agreement may be the proper subject of judicial notice if there is no factual dispute that the document is genuine and accurate. (See *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 666, fn. 2 [taking judicial notice of settlement agreements on demurrer "as there is and can be no factual dispute concerning the contents of the agreements"].)

Although Chacon asserts that the "contents" of the Settlement Agreement and Release are disputed, he did not contend in the trial court, and does not argue on appeal, that those documents are fraudulent or that their contents are different from the documents that he signed. He does not deny that he entered into the Settlement Agreement and executed the Release. Thus, Chacon's actual dispute is not with the contents of the documents that Union Pacific offered in support of its motion, but rather with the legal effect and proper interpretation of those documents.

Taking judicial notice of a written agreement's *contents* is not the same as taking judicial notice of a particular *interpretation* of the agreement. Cases that Chacon cites make this point. As the court explained in *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, "Although the *existence* of a document may be judicially noticeable, the truth of the statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable." (*Id.* at p. 113, italics added; see also *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 ["Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning"].)

7

Thus, the trial court properly took judicial notice of the Settlement Agreement and the Release. Having done so, the court could consider those documents in ruling upon Union Pacific's motion for judgment on the pleadings. We may also consider those documents in reviewing the trial court's ruling. (Evid. Code, § 459, subd. (a).)

In doing so, we analyze disputes about the proper interpretation of the documents according to the usual rules that govern the interpretation of written instruments. If the language of the agreement is unambiguous and no disputed extrinsic evidence bears upon its meaning, interpretation of the document is a legal issue for the court. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 ["It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence"].)

Here, the issue is the validity of the Release under section 55 insofar as the Release purports to release the claims that Chacon asserts in his complaint. That is an issue of law if it can be resolved from the face of the Release. As discussed below, we conclude that the Release is invalid as a matter of law with respect to Chacon's claims in this action.

2. **Under Section 55, Chacon Could Not Validly Release Future Claims Unrelated to the Claim He Settled**

a. *FELA's provisions and purpose*

Section 1 of FELA provides that "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." (§ 51.)

8

Congress enacted this provision in 1908 "[c]ognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year." (*Conrail v. Gottshall* (1994) 512 U.S. 532, 542 (*Gottshall*).) In light of these dangers, Congress "crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers." (*Ibid.*, quoting *Tiller v. Atlantic Coast Line R. Co.* (1943) 318 U.S. 54, 58; see *Norfolk & Western Ry. v. Ayers* (2003) 538 U.S. 135, 144–145 (*Norfolk*).) In addition to establishing the right to seek damages for an employer's negligence under section 51, FELA abolished common law tort defenses that "had effectively barred recovery by injured workers," such as the fellow servant rule, contributory negligence (which FELA replaced with comparative negligence), and assumption of risk (eliminated in a 1939 amendment). (*Gottshall,* at pp. 542–543; see §§ 53–55.)

In section 55, Congress also "prohibited employers from exempting themselves from FELA through contract." (*Gottshall, supra,* 512 U.S. at p. 543.) Section 55 states in full: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act [45 U.S.C. § 51 et seq.], shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this act [*ibid.*], such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (§ 55.)

In *Callen*, the United States Supreme Court held that a release that a railroad employee provided in connection with the

settlement of a negligence claim did not fall within the scope of section 55. (*Callen, supra,* 332 U.S. at pp. 630–631.) The employee in that case received compensation for a claim arising from an on-the-job accident, and in return provided the railroad employer with a general release of all " 'claims and demands' " arising from injuries he sustained in the accident. (*Id.* at pp. 626–627.) The court concluded that "[i]t is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." (*Id.* at p. 631.)

Thus, under *Callen*, it is clear that section 55 does not prohibit a release in connection with the settlement of claims arising from a particular incident of alleged negligence. But *Callen* did not explain, and the court has not yet considered, the *scope* of a valid release in connection with such a settlement. In particular, the court has not decided the question presented here: Whether a railroad employee can provide a valid release of future, unrelated claims when settling a claim arising from a particular injury.

b. ***Lower court decisions concerning the scope of a permissible release under section 55***

The "validity of releases under [FELA] raises a federal question to be determined by federal rather than state law." (*Dice v. Akron, C. & Y. R. Co.* (1952) 342 U.S. 359, 361 (*Dice*).) In interpreting federal law, we are of course bound by decisions of the United States Supreme Court. However, the " 'prevailing view' " is that a California state court may "make an independent

10

determination of federal law where lower federal court precedents are divided." (*Fair v. BNSF Railway Co.* (2015) 238 Cal.App.4th 269, 287, fn. 10, quoting 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 506, pp. 569–570; see *Rohr Aircraft Corp. v. County of San Diego* (1959) 51 Cal.2d 759, 764 ["Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law"], revd. on other grounds, 362 U.S. 628; *Lockhart v. Fretwell* (1993) 506 U.S. 364, 376, conc. Opn. of Thomas, J. ["neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation"].)

The federal courts are divided in their views on the permissible scope of releases under section 55. In *Babbitt*, the Sixth Circuit held that "[t]o be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." (*Babbitt, supra,* 104 F.3d at p. 93.) The court in that case considered the validity of general releases the plaintiffs had provided in connection with an early retirement program. (*Id.* at p. 90.) The program offered railroad employees a lump sum payment and the continuation of benefits in return for early retirement and a release. (*Ibid.*) The release purported to preclude claims "of any kind whatsoever, known or unknown," arising from the plaintiffs' employment. (*Id.* at p. 91, fn. 2.) The plaintiffs later sued for hearing loss that they claimed they suffered from noisy conditions during their railroad employment. (*Id.* at p. 90.)

11

The court contrasted the United States Supreme Court's opinion in *Callen* with several other decisions by the court that invalidated general releases provided by railroad employees. In *Callen,* "the employer and employee executed a contract that settled an actual controversy, *i.e.*, liability for the plaintiff's specific injuries." (*Babbitt, supra,* 104 F.3d at p. 92; see *Callen, supra,* 332 U.S. at p. 631.) In contrast, in *Philadelphia, B. & W. R. Co. v. Schubert* (1912) 224 U.S. 603 (*Schubert*) and *Duncan v. Thompson* (1941) 315 U.S. 1 (*Duncan*), railroad employees executed general releases without settling "claims for specific injuries." (See *Babbitt,* at pp. 92–93.) In *Shubert,* the court held that section 55 invalidated a general release given as a condition of accepting injury benefits from an employer-operated relief fund. (*Babbitt*, at p. 92, citing *Schubert*, at pp. 606–607, 612.) And in *Duncan,* the court held that a release an employee provided in exchange for accepting money for living expenses following an injury was invalid because the employee "never actually settled his claim." (*Babbitt*, at p. 92, citing *Duncan*, at pp. 7–8.)

From these decisions, the court in *Babbitt* concluded that "where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the [FELA]. However, where the release was not executed as part of a specific settlement of FELA claims, [section 55] precludes the employer from claiming the release as a bar to liability." (*Babbitt, supra,* 104 F.3d at p. 93.) Because the district court in *Babbitt* had not analyzed whether the releases the plaintiff employees had provided were intended to resolve a

claim of liability for the specific injuries in controversy, the court remanded for that purpose. (*Ibid.*)

In *Wicker, supra,* 142 F.3d 690, the Third Circuit took a different approach. The court surveyed the relevant cases from the United States Supreme Court and other courts, including *Babbitt,* and concluded that to be valid under section 55, a release need not necessarily be limited to settlement of a specific, existing claim. Rather, the court held that "a release does not violate [section 55] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed." (*Id.* at p. 701.)

Thus, in contrast to the Sixth Circuit in *Babbitt,* the Third Circuit in *Wicker* adopted a rule that permits a railroad employee to release claims for possible future injuries, provided the employee is aware of particular risks and intends to release claims arising from those risks.[4] The court noted that a "bright line" rule like the one described in *Babbitt* "has the benefit of predictability." (*Wicker, supra,* 142 F.3d at p. 700.) But the court reasoned that "it is entirely conceivable that both employee and

---

[4] The court recognized that determining the parties' intent to waive particular risks is a "fact-intensive process" that cannot necessarily be determined from the release alone. (*Wicker, supra,* 142 F.3d at p. 701.) Indeed, the court concluded that the releases at issue in that case were invalid. The plaintiffs had all signed broad releases after claiming various work injuries and later sued on new claims allegedly arising from exposure to harmful chemicals. The court concluded that there was "no evidence that any of the plaintiffs, despite being represented by counsel, was aware of the potential health risks to which he had been exposed." (*Id.* at p. 702.)

13

employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement." (*Ibid.*)  The court distinguished *Schubert* and *Duncan* on the ground that those cases did not involve negotiated settlements of existing controversies.  The court characterized the holdings in those cases as establishing that "a release of FELA claims given as a condition of employment, or signed without negotiation, is void under [section 55]."  (*Ibid.*)

Cases following *Babbitt* and *Wicker* have varied in their approaches.  Some courts have adopted the reasoning in *Babbitt*.[5] An apparent majority of courts follows *Wicker*.[6]  Other courts have attempted to reconcile the two decisions[7] or have decided that the particular releases at issue in the case at hand would be void under either standard and therefore no choice is necessary.[8]

Importantly, some of the courts that have adopted or expressed approval of the *Wicker* "risk of harm" standard also appear to have grafted a limitation on that standard that would

---

[5] See, e.g., *Arpin v. Conrail* (Ohio Ct. App. 2016) 2016-Ohio-8313 [75 N.E.3d 948, 955]; *Stephens v. Alabama State Docks Terminal Ry.* (Ala. Civ. App. 1998) 723 So.2d 83, 87.

[6] See, e.g., *Cole v. Norfolk S. Ry. Co.* (2017) 294 Va. 92 [803 S.E.2d 346] (*Cole*); *Ill. Cent. R.R. v. Acuff* (Miss. 2006) 950 So.2d 947, 960; *Jaqua v. Canadian Nat'l R.R.* (2007) 274 Mich.App. 540, 542 [734 N.W.2d 228].

[7] See, e.g., *Ratliff v. Norfolk S. Ry. Co.* (2009) 224 W.Va. 13, 23 [680 S.E.2d 28, 38] ["we perceive that the *Babbitt* and *Wicker* cases actually set out different standards to be applied in different circumstances"].

[8] See, e.g., *Molder v. BNSF Ry. Co.* (E.D.Wash. 2019) 2019 U.S.Dist.LEXIS 26145, at p. *10.

preclude the release of some known risks. That limitation requires that claims from potential future injuries may be released only if they have some relationship to the claim that is being compromised.[9] (See, e.g., *Murphy v. Union Pac. R.R. Co.* (Ct. App. Ark. 2019) 2019 Ark.App. 169, \*11–\*12 [574 S.W.3d 676] [the *Wicker* standard " 'permits enforcement not only for the specific injuries already manifested at the time of its execution but also any risks of future injury which the parties specifically contemplated in its execution, *so long as those risks are properly within the ambit of the claim compromised*' "], quoting *Oliverio v. Consol. Rail Corp.* (N.Y. Sup. Ct. 2006) 14 Misc.3d 219, 822 N.Y.S.2d 699, 702, italics added; *Daniels v. Union Pac. R.R. Co.* (Ct. App. Ill. 2009) 388 Ill.App.3d 850, 859 [904 N.E.2d 1003] ["Even under the more expansive holding of *Wicker,* which permits releases of *known risks*, releases must address a specific instance of disputed liability. In other words, any intention to prevent a claim unrelated to the one compromised would be void under [section 55]"]; *Langrell v. Union Pac. R.R. Co.* (D. Neb. 2020) 2020 U.S. Dist.LEXIS 99509, at p. \*12 ["a release that evidences an intent to preclude a claim that is unrelated to the one compromised will be void under [section 55] because there is no controversy or dispute about a potential claim for the parties to settle"].)

---

[9] The court in *Wicker* apparently did not contemplate such a limitation. The toxic chemical exposure claims that the plaintiffs asserted in that case were unrelated to the injuries underlying the prior claims that they settled. (See *Wicker, supra,* 142 F.3d at pp. 692–694.)

### c. *Section 55 precludes the release of future unrelated claims*

We conclude that the "bright line" rule explained in *Babbitt* is more consistent with section 55 and with the United States Supreme Court decisions interpreting it, at least as applied to the purported release of *unrelated* future claims.

First, a railroad employee who provides a release of possible future claims against a railroad employer while settling a specific injury claim is not in a materially different position from an employee who provides such a release in other contexts. The court's opinions in *Schubert* and *Duncan* show that the payment of compensation is not itself sufficient to remove a release from the scope of section 55. In return for the releases they provided, the plaintiff in *Schubert* received benefits from a relief fund and the plaintiff in *Duncan* received compensation for his living expenses after suffering an injury. (See *Schubert, supra,* 224 U.S. at pp. 607–608; *Duncan, supra,* 315 U.S. at p. 3.) Yet those releases were still invalid. There is no apparent reason why the payment of compensation for possible injuries from future claims should be treated any differently just because such compensation is paid in connection with the settlement of some existing, unrelated claim.

Nor is the fact that a release is *negotiated* a material difference. Section 55 invalidates releases "the purpose or intent of which shall be to enable any common carrier to exempt itself from liability." That section does not create an exception for situations in which an employee knowingly assents to the employer's "purpose or intent" in return for negotiated compensation.

There are good reasons not to read such an exception into section 55.  A railroad employer is likely to have more knowledge of the risks created by its own conduct than the employee who agrees to waive those risks.  And the employer will certainly have more control over its conduct to avoid the negligence that is a prerequisite to a FELA claim.[10]

---

[10] It is also immaterial whether a plaintiff continues his or her employment with a railroad after providing a release or, like Chacon, provides the release in connection with his or her severance from the company.  The language of section 55 broadly applies to "[a]ny contract, rule, regulation, or device whatsoever."  In *Duncan,* the court rejected an argument that section 55 only applies to releases provided *before* an injury occurs.  (*Duncan, supra,* 315 U.S. at pp. 5–6.)  In doing so, the court noted that the comprehensive language of section 55 replaced a prior version of section 55 that was limited to a " 'contract of employment, insurance, relief benefit, or indemnity.' "  (*Id.* at p. 5.)  That change followed congressional consideration of prior state statutes limiting valid releases, some of which applied only to contracts of employment.  (*Id.* at p. 6.)  The court concluded that Congress's adoption of the broad language of section 55, "without adding any of the other limitations which some of the state statutes had embodied, argues persuasively that Congress wanted [section 55] to have the full effect that its comprehensive phraseology implies."  (*Ibid.*)

Moreover, the distinction between current or former employment was not significant to the decisions in either *Wicker* or *Babbitt.*  The court in *Wicker* noted Conrail's argument that the releases in that case "were executed as part of a settlement of existing claims and the termination of employment," and were therefore "meant to put to rest all present and future claims."  (*Wicker, supra,* 142 F.3d at p. 695.)  However, the court rested its

17

The presence of a *known* risk does not change this analysis. For example, a railroad employee might be willing to negotiate a release of any future claims resulting from particular known accident risks associated with his or her specific job in return for sufficient compensation. But nothing in section 55 indicates that such a release would be permissible. Thus, the court's observation in *Wicker* that both employer and employee may "fully comprehend future risks and potential liabilities" and nevertheless both desire an "immediate and permanent settlement" may be true, but it is not a reason to conclude that section 55 is inapplicable. (See *Wicker, supra,* 142 F.3d at p. 700.)

Second, tethering a valid release to a specific existing claim is most consistent with the court's apparent rationale in *Callen*. In *Callen*, the court concluded that a release was valid under section 55 because it was "a means of compromising a *claimed liability*." (*Callen, supra,* 332 U.S. at p. 631, italics added.) The court found no congressional prohibition on the settlement of claims "without litigation" where there are controversies as to "whether there is liability, and if so for how much." (*Ibid.*)

The court's decision permits parties who settle a claim "without litigation" to achieve finality concerning the claims at issue. Parties who pursue a dispute to final resolution through litigation typically obtain a result that would preclude any future assertion of the same claim due to the doctrine of res judicata, or

---

decision on other grounds and ultimately concluded that the releases in that case were invalid. (*Id.* at pp. 701–702.) And the releases that the court in *Babbitt* held were subject to the "bright line" rule were provided in connection with an early retirement program. (See *Babbitt, supra,* 104 F.3d at pp. 90, 93.)

18

the "single action rule." (See Rest.2d Judgments, § 18, subd. (1); see *Norfolk, supra,* 538 U.S. at p. 152, fn. 12.) The holding in *Callen* allows parties who settle a claim without litigation to define the scope of claims that are precluded by their settlement. But the court in *Callen* did not suggest that the parties settling an existing claim would be free to expand a release to include future unrelated risks.

Third, the predictability of the Sixth Circuit's "bright line" rule is more likely to further the interest of uniformity in determining liability under FELA in federal and state courts. (See *Dice, supra,* 342 U.S. at p. 362 [the validity of releases "is but one of the many interrelated questions that must constantly be determined in [FELA] cases according to a uniform federal law"].) Leaving determination of the validity of releases to a fact-intensive, case-by-case analysis of particular employees' intent in all the federal and state courts—as the Third Circuit's decision in *Wicker* would require—is likely to lead to dissimilar results in similar cases, undermining the goal of uniform application of federal law.

### d. *Chacon's settlement of claims from an accident in 2007 did not validly release claims in 2018 for alleged exposure to carcinogenic substances*

The Release that Chacon provided in settling his prior lawsuit in 2010 validly applied to all claims arising from the 2007 accident at issue in that litigation. However, for the reasons discussed above, the Release was invalid to the extent that it purported to release future, unrelated claims for exposure to "any toxic chemical, and/or environmental substance, condition and/or

19

fumes." Thus, the Release does not bar Chacon's claims in this litigation.

We recognize that this holding abrogates the parties' apparent mutual intent—as stated in the Release—to "completely and irrevocably settle" such claims. In other contexts courts generally strive to give effect to such agreements when the parties' mutual assent is freely and knowingly given. However, section 55 creates limitations in FELA cases that do not exist in other types of litigation. We must give effect to those limitations, which we interpret to preclude a railroad employee's release of unrelated future claims in settling an existing claim.

However, because Chacon's claims in this case concern alleged injury from conduct that is unrelated to the claim that he previously settled, we need not consider whether section 55 precludes the valid release of a future claim for injury arising from the *same* conduct by a railroad employer. In the language of *Callen*, the issue presented in that situation is whether possible future injury from the same negligent conduct underlying the settlement is part of the "claimed liability" that the parties are settling. (See *Callen, supra,* 332 U.S. at p. 631.) Despite the broad language of the "bright line" test described in *Babbitt,* that case did not present this specific issue, and the court did not decide it. We also do not reach the issue.[11]

_____

[11] In particular, we note the complexity of claims resulting from exposure to asbestos, which can include initial claims for asbestosis and later claims for a latent disease (mesothelioma) allegedly resulting from the same exposure. (See *Norfolk, supra,* 538 U.S. at pp. 152–153 & fn. 12; *Cole, supra,* 294 Va. at p. 107 ["While an employee who has previously recovered for asbestosis

**DISPOSITION**

The judgment is reversed.  The case is remanded for further proceedings on Chacon's complaint.  Chacon is entitled to his costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

---

may bring a second claim if cancer later develops, this does not mean that he cannot settle his known risk of a future cancer claim as part of his initial asbestosis action if desired"].)  The issue of whether possible future injury from cancer is a "claimed liability" in an action for asbestosis that may permissibly be released in settling that action is not presented here.  (See *Callen, supra,* 332 U.S. at p. 631.)

21